Ursula GIBSON; Mary Depina, individually on behalf of themselves and all others similarly situated, Plaintiffs–Appellees,

v.

**CHRYSLER CORPORATION,**
Defendant–Appellant.

Paul Maldonado, Plaintiff–Appellee,

v.

Chrysler Corporation, Defendant–Appellant.

Stephen Depalma, Plaintiff–Appellee,

v.

Chrysler Corporation, Defendant–Appellant.

Ursula Gibson; Mary Depina, individually on behalf of themselves and all others similarly situated, Plaintiffs–Appellees,

v.

Chrysler Corporation, Defendant–Appellant.

Stephen Depalma, Plaintiff–Appellee,

v.

Chrysler Corporation, Defendant–Appellant.

Paul Maldonado, Plaintiff–Appellee,

v.

Chrysler Corporation, Defendant–Appellant.

Nos. 99–16436, 99–17021, 99–16441, 99–17066, 99–16493, 99–17067.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 14, 2000

Filed Aug. 20, 2001

Francis O. Scarpulla, San Francisco, California; Guido Saveri and Richard Saveri, Saveri & Saveri, San Francisco, California; Eric D. Freed and Michael J. Freed, Much, Shelist, Freed, Denenberg, Ament & Rubenstein, Chicago, Illinois; W. Ruel Walker, Oakland, California; Steven W. Berman and Paul Weiss, Hagens and Berman, Seattle, Washington, for the plaintiffs-appellees.

Charles A. Newman and Peter Herzog, Bryan Cave LLP, St. Louis, Missouri; Kevin J. Dunne, Linda N. Ha, and Cynthia H. Plevin, Sedgwick, Detert, Moran & Arnold, San Francisco, California, for the defendant-appellant.

Before: SCHROEDER, HALL, and W. FLETCHER, Circuit Judges.

WILLIAM A. FLETCHER, Circuit Judge:

Chrysler Corporation ("Chrysler")[1] appeals sanctions and attorneys' fees awarded by the district court. Chrysler has twice attempted to remove plaintiffs' class actions from California state court to federal court. After Chrysler's second attempt, the district court held that several of Chrysler's arguments were frivolous, and awarded sanctions and fees. We believe that removal was improper, but we hold that Chrysler's arguments, taken as a whole, were not frivolous. We reverse the district court's award of sanctions, but we

---

1. We refer to the defendant corporation as "Chrysler," even though it became Daimler-Chrysler during the course of this litigation.

affirm the district court's award of attorneys' fees.

## I. Background

This appeal involves three state-law class actions against Chrysler. The complaints in all three actions alleged that Chrysler used a finishing process known as "electrocoat" (marketed under various trade names, including "Uniprime," "HBEC," and "Ecoat") to paint vehicles it manufactured between 1986 and 1997. Plaintiffs alleged that the electrocoat process produced a poor bond between the primer and the exterior paint on the vehicles, and that the exterior paint is prone to peel off, especially after prolonged exposure to ultraviolet light. They further alleged that Chrysler knew about the problem, but neither disclosed the defect to its customers nor properly honored warranty claims. All three of the complaints alleged causes of action for breach of express warranty, violation of California's Song Beverly Warranty Act, and unfair competition and business practices. Two of the complaints also alleged a cause of action for breach of contract. All three complaints alleged facts sufficient to establish complete diversity of citizenship,[2] but none alleged that the amount in controversy exceeded $75,000.

In early 1998, Chrysler removed all of the actions to federal court based on diversity. Plaintiffs moved to remand the actions to state court. Chrysler opposed remand and moved for an order granting limited discovery of facts relevant to the amount in controversy. The district court denied Chrysler's discovery motion and remanded. In remanding, the district court stated that if Chrysler could establish facts through state court discovery showing an amount in controversy in excess of $75,000, it could properly return to federal court. The district court warned, however, that sanctions might be appropriate if Chrysler again attempted to remove improperly because Chrysler's legal arguments had been repeatedly rejected by other district courts.

Chrysler sought a writ of mandamus from this court that would have required the district court to reconsider its remand order and its denial of limited discovery. We denied the writ in an unpublished order. After remand, plaintiffs consolidated their actions and filed a single first amended complaint. This complaint alleged that "[t]he amount in controversy as to the plaintiffs and each class member does not exceed $75,000, including interest and any pro rata award of attorneys' fees and costs, and damages," and that the amount in controversy averaged less than $30,000 per plaintiff. It repeated the causes of action alleged in the first complaint, and added a claim under California's Consumer Legal Remedies Act, which provides for punitive damages. *See* Cal. Civ.Code § 1780(a).

Chrysler requested discovery in state court relevant to the amount in controversy required for diversity jurisdiction in federal court. It also asked plaintiffs either to waive their requests for punitive damages and attorneys' fees or to stipulate that they did not seek any recovery in excess of $75,000 for any plaintiff. Plaintiffs did not comply with these requests, and the state court did not compel them to

---

**2.** The named plaintiffs are citizens of California, and defendant Chrysler was a Delaware corporation with its principal place of business in Michigan. The complete diversity requirement in class actions is based on the citizenship of the named plaintiffs at the time the action is filed. *See Lew v. Moss*, 797 F.2d 747, 750 (9th Cir.1986). The citizenship of unnamed class members is disregarded. *Supreme Tribe of Ben–Hur v. Cauble*, 255 U.S. 356, 366–67, 41 S.Ct. 338, 65 L.Ed. 673 (1921).

do so. Believing that it faced a one-year deadline for removal of the case under 28 U.S.C. § 1446(b), Chrysler filed a second notice of removal on March 5, 1999, one day before the deadline would take effect.[3] Chrysler again asserted that the plaintiffs' (now-consolidated) action satisfied the amount-in-controversy requirement.

Plaintiffs moved for remand, for sanctions under Rule 11, and for attorneys' fees under 28 U.S.C. § 1447(c). The district court granted all three motions. It held not only that Chrysler had failed once again to establish diversity jurisdiction, but also that several of its arguments were "clearly frivolous in light of this court's July 20 Order and the decisions of other courts in the Ninth Circuit." The district court imposed Rule 11 sanctions of $1,500 and ordered Chrysler to pay attorneys' fees for the time spent by plaintiffs in opposing Chrysler's second attempted removal (an amount later determined to be $28,650). Chrysler timely appealed.

## II. Appellate Jurisdiction

■ We first consider our appellate jurisdiction. The removal statute directs district courts to remand any case removed from a state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). It goes on to provide, "An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." *Id.* § 1447(d); *see also Things Remembered, Inc., v. Petrarca,* 516 U.S. 124, 128, 116

S.Ct. 494, 133 L.Ed.2d 461 (1995). Section 1447(d) prevents Chrysler from directly challenging the district court's remand order on appeal. But Chrysler can challenge the district court's decision to impose sanctions and to award attorneys' fees.[4] *See* 28 U.S.C. § 1291.

■ We have held that a party sanctioned for a frivolous removal cannot appeal the sanction on the ground that removal was proper; reversal on that ground alone would constitute direct review of the remand order, which is precluded by § 1447(d). *See Lemos v. Fencl* 828 F.2d 616, 617–18 (9th Cir.1987). But, as we held in *Lemos,* a party can appeal an award of sanctions or fees on the ground that the removal was neither frivolous nor filed for an improper purpose. A ruling on the propriety of an award of sanctions or fees is not the same thing as a direct ruling on the propriety of a remand. *Id.* at 619; *see also Peabody v. Maud Van Cortland Hill Schroll Trust,* 892 F.2d 772, 775 (9th Cir.1990). We have said that in evaluating the propriety of an award of attorneys' fees, we must give "some consideration" to the merits of a remand order, and that this kind of evaluation does not violate the command of § 1447(d). *See Moore v. Permanente Med. Group,* 981 F.2d 443, 447 (9th Cir.1992). More recently, we have held that review of a fee award under § 1447(c) "must include a de novo examination of whether the remand order was legally correct." *Balcorta v. Twentieth Century–Fox Film Corp.,* 208 F.3d

---

3. We have held that the one-year deadline of 28 U.S.C. § 1446(b) for removing diversity cases applies only to cases in which there is no basis for diversity jurisdiction when the case is filed in state court. If there is a basis for diversity jurisdiction at the time of filing, there is no deadline. *See Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313, 1316 (9th Cir.1998); accord *Brierly v. Alusuisse Flexible Packaging, Inc.,* 170 F.3d 583, 589–90 (6th Cir.1999);

*New York Life Ins. Co. v. Deshotel,* 142 F.3d 873, 885–86 (5th Cir.1998).

4. Although the district court lacked subject matter jurisdiction over the case, it did have jurisdiction to impose sanctions and a fee award. *See Moore v. Permanente Med. Group,* 981 F.2d at 445; *Westlake North Prop. Owners Assoc. v. City of Thousand Oaks,* 915 F.2d 1301, 1303 (9th Cir.1990).

1102, 1106 (9th Cir.2000). Accordingly, in reviewing the district court's award of sanctions and attorneys' fees, we must address the merits of Chrysler's arguments in favor of removal.

### III. Diversity Jurisdiction in the District Court

■ The sole dispute in the district court was whether plaintiffs' consolidated class action satisfied the $75,000 amount-in-controversy requirement of 28 U.S.C. § 1332. A defendant attempting to remove a diversity case must show by a preponderance of the evidence that the amount-in-controversy requirement is satisfied. *See Singer v. State Farm Mut. Auto. Ins. Co.,* 116 F.3d 373, 376 (9th Cir.1997); *Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398, 403–04 (9th Cir. 1996).

Chrysler makes two arguments to support its conclusion that the amount-in-controversy requirement was satisfied in the district court. Chrysler's first argument relies on supplemental jurisdiction. Chrysler argues that the district court had original jurisdiction over the claims of individual plaintiffs who satisfied the amount-in-controversy requirement, and supplemental jurisdiction over the claims of the remaining class members who did not. Chrysler's second argument is that the plaintiffs seek monetary compensation that is the "common and undivided interest" of the class members, and that the proper amount to consider for purposes of jurisdictional requirements is not each plaintiff's pro rata share, but rather the aggregated sum of those shares.

For the reasons that follow, we disagree with both arguments. We agree with some aspects of Chrysler's supplemental jurisdiction argument, but we disagree with others; considered as a whole, the argument fails. We disagree with the entirety of Chrysler's aggregation argument. We consider the arguments in turn.

### A. Supplemental Jurisdiction

1. Supplemental Jurisdiction Based on Claims of Individual Named Plaintiffs

Chrysler argued twice before the district court that there was federal subject matter jurisdiction over the entire class action, including the claims of the unnamed class members, because the individual named plaintiffs each had claims worth more than $75,000. Chrysler argued that 28 U.S.C. § 1367 confers supplemental jurisdiction over the claims of unnamed class members when there is subject matter jurisdiction over the claims of the named plaintiffs. Although the Supreme Court held in *Zahn v. International Paper Co.,* 414 U.S. 291, 300, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), that each member of a class must satisfy the amount-in-controversy requirement, Chrysler argued that § 1367, enacted after *Zahn,* overrules that case. The district court disagreed. It recognized that other circuits had adopted Chrysler's reasoning, but aligned itself with what it described as the "chorus of courts" that had reaffirmed *Zahn* after the passage of § 1367.

Of the circuit courts that have reached the issue, the Fifth and the Seventh have agreed with Chrysler. *See In re Abbott Laboratories,* 51 F.3d 524, 529 (5th Cir. 1995), *Stromberg Metal Works, Inc., v. Press Mechanical, Inc.,* 77 F.3d 928, 930–33 (7th Cir.1996) (agreeing with *Abbott Laboratories* in a Rule 20 joinder case); *see also In re Brand Name Prescription Drugs Antitrust Litig.,* 123 F.3d 599 (7th Cir.1997) (following *Stromberg Metal Works* in a Rule 23 class action). The Third, Eighth, and the Tenth have agreed with the district court. *See Meritcare Inc. v. St. Paul Mercury Ins. Co.,* 166 F.3d 214 (3d Cir.1999); *Trimble v. Asarco, Inc.,* 232

F.3d 946, 962 (8th Cir.2000); *Leonhardt v. Western Sugar Co.,* 160 F.3d 631, 640–41 (10th Cir.1998). The Supreme Court granted certiorari in *Abbott Laboratories,* but after the recusal of one Justice it affirmed without opinion by an equally divided Court. *See* 529 U.S. 333, 120 S.Ct. 1578, 146 L.Ed.2d 306 (2000). For the reasons that follow, we agree with the Fifth and Seventh Circuits in *Abbott Laboratories* and *Stromberg Metal Works,* and hold that *Zahn* is overruled by § 1367.

### a. The Plain Meaning of § 1367

Section 1367 was enacted as part of the Judicial Improvement Act of 1990, seventeen years after the Supreme Court's decision in *Zahn.* In relevant part, it provides:

(a) Except as provided in subsection[ ](b) . . ., in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

The first two courts of appeals to consider the effect of § 1367 on *Zahn*-the Fifth and Seventh Circuits-had no doubt about the plain meaning of this text. The Fifth Circuit in *Abbott Laboratories* stated its conclusion succinctly: "[T]he statute's first section vests federal courts with the power to hear supplemental claims generally, subject to limited exceptions set forth in the statute's second section. Class actions are not among the enumerated exceptions . . . [U]nder § 1367 a district court can exercise supplemental jurisdiction over members of a class, although they did not meet the amount-in-controversy requirement, as did the class representatives." *Id.* at 528–29. The Seventh Circuit agreed, writing that the result in *Abbott Laboratories* "has strong support from the statutory text." *Stromberg Metal Works,* 77 F.3d at 930. Our own analysis convinces us that *Abbott Laboratories* properly understood the plain meaning of the text of § 1367, and correctly held that the claims of unnamed class members in a diversity class action need not satisfy the amount-in-controversy requirement.

The Tenth and Eighth Circuits have argued that the text of § 1367 has a plain meaning, but they reached the opposite conclusion about what that plain meaning is. In *Leonhardt,* the lead case, the Tenth Circuit made two textual arguments to support its conclusion. Because of the importance of the plain meaning of § 1367, we analyze those two arguments in detail.

### (1) The Meaning of "Original Jurisdiction" in § 1367(a)

*Leonhardt's* first argument is that § 1367(a) does not confer supplemental jurisdiction over unnamed class members whose claims do not satisfy the amount-in-controversy requirement because the term "original jurisdiction" in subsection (a) has

a different meaning in diversity cases than in federal question cases.[5] *Leonhardt* notes that under subsection (a) there is only supplemental jurisdiction over claims that are related to claims in a "civil action of which the district courts have *original jurisdiction*" (emphasis added). *Leonhardt* then argues that the existence of original jurisdiction under subsection (a) in a diversity case is determined by applying the basic diversity statute, 28 U.S.C. § 1332, to all the claims in the complaint. If § 1332 confers jurisdiction over all those claims, there is "original jurisdiction" within the meaning of subsection (a). However, if § 1332 confers jurisdiction over only some (but not all) of those claims, there is no "original jurisdiction." If there is no "original jurisdiction," there can be no supplemental jurisdiction either, for there is no jurisdiction to which supplemental jurisdiction can attach.

In the words of *Leonhardt,*

In our view, a literal and textually faithful reading of § 1367(a) leads to the opposite conclusion from that of the Fifth and Seventh Circuits. Section 1367(a) specifically addresses "any civil action of which the district courts have *original jurisdiction*." (Emphasis added). It then provides for *supplemental jurisdiction* over transactionally related claims. Section 1332 is what confers original jurisdiction over diversity cases and it expressly requires that the "matter in controversy exceed[ ] the sum or value of $75,000." While § 1332 does not expressly refer to class actions, the Supreme Court has noted that periodic congressional amendment of the diversity statute to alter only the *amount* in controversy evidences congressional agreement with the Court's holding that

"matter in controversy" does "not encompass[ ] the aggregation of separate and distinct claims." *Snyder* [*v. Harris*], 394 U.S. at 339, 89 S.Ct. 1053[.] Thus, Congress in § 1367(a) expressly excepted claims brought under § 1332 and its well-understood definition of "matter in controversy." *See* Pfander ... ("Section 1367(a) appears to assume that the existing rules of original jurisdiction will continue to apply and that the grant of supplemental jurisdiction will come into play only after the plaintiff has submitted claims in a well-pleaded complaint that properly invoke such original jurisdiction.").

160 F.3d at 640. *See also Trimble,* 232 F.3d at 962 ("We agree with and adopt the reasoning of the Tenth Circuit in *Leonhardt.*").

For *Leonhardt* to be right, the term "original jurisdiction" in subsection (a) must mean something different in diversity and federal question cases. Everyone agrees that in a federal question case there need not be subject matter jurisdiction over all the claims in the complaint for there to be "original jurisdiction" within the meaning of subsection (a). Rather, there is "original jurisdiction" if there is subject matter jurisdiction over one claim in the complaint. If there is subject matter jurisdiction over that one claim, there is supplemental jurisdiction over all the other claims that are transactionally related.

An example will clarify the point. If a non-diverse plaintiff files a complaint with two transactionally related claims against a single defendant, one based on federal law and one based on state law, there is "original jurisdiction" under subsection (a)

**5.** This argument was originally suggested by Professor James Pfander in a then-unpublished law review article. *See* 160 F.3d at 639 n. 6; James E. Pfander, "Supplemental Jurisdiction and Section 1367: The Case for a Sympathetic Textualism," 148 *U. Pa. L.Rev.* 109 (1999).

because there is subject matter jurisdiction over the federal-law claim. Because there is original jurisdiction, there is supplemental jurisdiction over the state-law claim. The example just described is, of course, *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the paradigm case of pendent (now supplemental) jurisdiction. If *Leonhardt*'s definition of "original jurisdiction" were applied to federal question cases, § 1367 would overrule *Gibbs*. Since no one, including the *Leonhardt* panel, argues that § 1367 has that consequence, the question is whether "original jurisdiction" in subsection (a) has a different meaning in diversity cases from its unquestioned meaning in federal question cases. For several reasons, we believe that "original jurisdiction" means the same thing in both kinds of cases.

First, there is nothing in the text of subsection (a) to suggest, even remotely, that there is such a difference in meaning. Specifically, nothing in the text suggests that in a diversity case (but not in a federal question case) the term "original jurisdiction" in subsection (a) requires subject matter jurisdiction over all the claims in a complaint.

Second, even though subsection (b) applies only to diversity cases, "original jurisdiction" in that section is used in the sense concededly applicable to federal question cases in subsection (a). The meaning of "original jurisdiction" in subsection (b) is apparent from the fact that subsection (b) excludes from supplemental jurisdiction claims made by a plaintiff against a non-diverse defendant joined under Rule 20. A plaintiff will ordinarily join all Rule 20 defendants in the complaint rather than waiting to join them by a later or amended pleading. The exclusion of joined claims against non-diverse defendants from the supplemental jurisdiction granted by subsection (a) indicates that such claims are covered by supplemental jurisdiction, for there would otherwise be no reason for subsection (b) to except them from supplemental jurisdiction.

In order for such joined claims to have been covered by supplemental jurisdiction, "original jurisdiction" under subsection (a) must be determined by looking to see if there was subject matter jurisdiction over any one claim in the complaint, rather than over all of the claims in the complaint. If "original jurisdiction" under subsection (a) were determined by looking at all the claims in the complaint, there would have been no jurisdiction under § 1332 (and hence no "original jurisdiction") in the first place because there was a lack of complete diversity when all the claims were considered together. *See Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). The exclusion by subsection (b) of claims by non-diverse parties joined under Rule 20 from supplemental jurisdiction would thus be superfluous.

Third, we are reinforced in our reading of the term "original jurisdiction" by a precursor to § 1367. A proposed supplemental jurisdiction statute in a Working Paper of the Federal Court Study Committee provided as follows:

(a) Except as provided in subsections (b) and (c) or in another provision of this Title, in any civil action on a claim for which jurisdiction is provided, the district court shall have jurisdiction over all other claims arising out of the same transaction or occurrence, including claims that require the joinder of additional parties.

(b) In civil actions under § 1332 of this Title, jurisdiction shall not extend to claims by the plaintiff against parties joined under Rules 14 and 19 of the Federal Rules of Civil Procedure, or to claims by parties who intervene under Rule 24(b) of the Federal Rules of Civil

Procedure, *provided*, that the court may hear such claims if necessary to prevent substantial prejudice to a party or third-party.

1 Federal Courts Study Committee, Working Papers and Subcommittee Reports, July 1, 1990 at 567–68 (hereinafter "Working Paper"). The proposed statute has the same basic analytic structure as the actual statute. Subsection (a) broadly confers supplemental jurisdiction, and subsection (b) takes away some of that jurisdiction in diversity cases. The proposed statute uses the single term "jurisdiction" to include both "original jurisdiction" and "supplemental jurisdiction," but we believe that this does not affect our analysis. The authors of the Working Paper explicitly stated what the effect of their proposed statute would be: "[O]ur proposal would overrule the Supreme Court's decision in *Zahn v. International Paper Co.* ... From a policy standpoint, this decision makes little sense, and we therefore recommend that Congress overrule it." *Id.* at 561 n. 33. We recognize that the Federal Courts Study Committee disagreed with this policy recommendation, but we do not rely on the Working Paper as evidence of what the Study Committee wanted to do. Rather, we cite it because the text of the proposed statute is strikingly similar to the text of § 1367, and because the Study Committee explicitly stated that the text would overrule *Zahn*.

Finally, even if *Leonhardt*'s reading of "original jurisdiction" in subsection (a) were right, its ultimate holding would still be wrong. A class action complaint is filed only by a named plaintiff or plaintiffs. Although such an action is often referred to as a class action when it is filed, it is, at the time of filing, only a would-be class action. It does not become a class action until certified by the district court. The certification decision is not made at the time of filing, but, rather, "[a]s soon as practicable *after the commencement of an action*." Fed.R.Civ.P. 23(c) (emphasis added). And as Rule 3 tells us, "[a] civil action is commenced by filing a complaint with the court." Therefore, if there is complete diversity and a sufficient amount in controversy for the named plaintiff or plaintiffs in the complaint, there is "original jurisdiction" under subsection (a) over the class action, even as *Leonhardt* would read the term.

### (2) The Meaning of the Last Phrase of § 1367(b)

*Leonhardt*'s second argument is that the last phrase of subsection (b) indicates that § 1367 was not intended to overrule *Zahn*. For the convenience of the reader, we quote § 1367(b) again, and italicize the phrase in question:

In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, *when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.*

*Leonhardt* does not analyze the precise meaning of the phrase on which it relies. The entirety of *Leonhardt*'s discussion consists of the following:

That very language evidences a concern for preserving the historical and well-established rules of diversity. The fact that § 1367(b) prohibits the *addition* of claims and parties which would destroy diversity supports our interpretation of § 1367(a) as also fully respecting the

rules of diversity in cases invoking the original jurisdiction of the federal courts.

160 F.3d at 640 (emphasis in original). We agree with *Leonhardt*'s general statement that the phrase "evidences a concern for preserving the historical and well-established rules of diversity," but we disagree with *Leonhardt* as to the specific meaning of the phrase.

The text of § 1367 has the following analytic structure: first, subsection (a) broadly confers supplemental jurisdiction, subject to certain exceptions; second, the first part of subsection (b) sets out exceptions to subsection (a); and third, the last phrase of subsection (b) limits the reach of those exceptions. We believe that the last phrase of subsection (b) means that there is supplemental jurisdiction over a claim otherwise excepted from supplemental jurisdiction by subsection (b) if § 1332, as understood before the passage of § 1367, would have authorized jurisdiction over that claim.

Such claims do exist. For example, subsection (b) excepts from supplemental jurisdiction a claim by a plaintiff against a third-party defendant who has been impleaded under Rule 14. To that extent, it codifies the result of *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). But without its last phrase, subsection (b) would also except from supplemental jurisdiction a claim asserted by the plaintiff against the third-party defendant when that claim is a compulsory counterclaim to a claim by the third-party defendant against the plaintiff. The claim by the third-party defendant against the plaintiff is clearly within the supplemental jurisdiction conferred by subsection (a), and it would be both unfair and inefficient to forbid the plaintiff's compulsory counterclaim to that claim. The question does not arise often, but there was circuit law be-

fore the passage of § 1367 holding that such a compulsory counterclaim was permitted under § 1332 pursuant to what was then known as ancillary jurisdiction. *See Revere Copper and Brass Inc. v. Aetna Cas. & Sur. Co.,* 426 F.2d 709, 714–15 (5th Cir.1970).

In contrast to the general reading in *Leonhardt,* our reading gives specific meaning to the last phrase of § 1367(b), for it preserves a small slice of supplemental jurisdiction that would otherwise have been lost. Moreover, our reading is entirely consistent with our conclusion that § 1367 overrules *Zahn.* As we read the phrase, it preserves ancillary (now supplemental) jurisdiction that existed under § 1332 prior to the passage of § 1367 and does nothing to prevent the expansion of such jurisdiction accomplished by the rest of § 1367.

### b. The Legislative History of § 1367

For the reasons outlined above, we conclude that the text of § 1367 is clear, and that it confers supplemental jurisdiction over the claims of class members in a diversity class action when named plaintiffs have claims with an amount in controversy in excess of $75,000. After concluding that the text of the statute is unambiguous, we would normally not examine its legislative history. "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then ... 'judicial inquiry is complete.'" *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (quoting *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981)). *See also City of Chicago v. Envt'l Defense Fund,* 511 U.S. 328, 337, 114 S.Ct. 1588, 128 L.Ed.2d 302 (1994) ("[I]t is the statute, and not the

Committee Report, which is the authoritative expression of the law.").

However, this is an unusual case. Four courts have held that the text of § 1367 is clear, but they have split evenly on what that text means. The Fifth and Seventh Circuits, in *Abbott Laboratories* and *Stromberg Metal Works*, have held that the text clearly overrules *Zahn*. The Tenth and the Eighth Circuits, in *Leonhardt* and *Trimble*, have held that the text clearly preserves *Zahn*. A fifth court, the Third Circuit in *Meritcare Inc. v. St. Paul Mercury Ins. Co.*, has held that the text is ambiguous, and has relied on legislative history to hold that it preserves *Zahn*.

All three courts holding that § 1367 preserves *Zahn* analyzed the legislative history of the statute. The Tenth and Eighth Circuits did so as a means of supporting their holdings, even though they found the text unambiguous. The Third Circuit did so as a means of ascertaining the meaning of the text, but noted that it would have done so even if it had found the text unambiguous:

> Although there is much to be said for *Leonhardt*'s view that the text does not displace *Zahn*'s ruling, we conclude that there is sufficient ambiguity in the statute to make resort to legislative history appropriate.... Even were we to conclude that Section 1367 is unambiguous, as *Abbott Laboratories* read[s] it, we would nevertheless turn to the legislative history because it is one of those "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters."

*Meritcare*, 166 F.3d at 222 (quoting *United States v. Sherman*, 150 F.3d 306, 313 (3d Cir.1998)).

We agree with the Third, Eighth and Tenth Circuits to this degree: the legislative history provides a substantial basis to believe that the omission of claims by Rule 23 plaintiffs from subsection (b) of § 1367, and the resulting overruling of *Zahn*, was an oversight. For example, one of the Senate sponsors of the Judicial Reform Act of 1990 repeatedly described as "non-controversial" and "quite modest" those portions of the Act that amended § 1367. *See* 136 Cong. Rec. S 17577 (Oct. 27, 1990) (statement of Sen. Grassley). This is an unlikely characterization for a provision that would open the federal courts to a significant number of additional diversity class actions. Further, the House Judiciary Committee's report on the bill stated that § 1367 was "not intended to affect the jurisdictional requirements of 28 U.S.C. § 1332 in diversity-only class actions, as those requirements were interpreted prior to *Finley*." H.R.Rep. No. 101–734 at 28–29 (Sept. 10, 1990). That sentence ended with a footnote citing *Zahn*, strongly suggesting that the proposed statute was intended to preserve the outcome in that case. Finally, the three law professors who helped draft § 1367 published an article soon after its enactment declaring that *Zahn* "remain[ed] good decisional law." Thomas M. Mengler, Stephen B. Burbank, and Thomas D. Rowe, *Congress Accepts Supreme Court's Invitation to Codify Supplemental Jurisdiction*, 74 *Judicature* 213, 215 (Dec.-Jan.1991).

We do not believe that this is enough to overcome the plain meaning of the text. Legislative history can justify a judicial departure from a clear text if Congress makes an obvious clerical error, particularly if the error results in an absurd or difficult-to-justify result. *See Green v. Bock Laundry Machine Co.*, 490 U.S. 504, 527, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989) (Scalia, J., concurring) ("We are confronted here with a statute which, if interpreted literally, produces an absurd, and perhaps unconstitutional, result.... I think it entirely appropriate to consult all public materials, including the background of [the

statute] and the legislative history of its adoption...."). But that is not the case here. Even courts that have read § 1367 to preserve *Zahn* agree that overruling it would not be an absurd result. *See, e.g., Russ v. State Farm Mut. Auto. Ins. Co.* 961 F.Supp. 808, 819 (E.D.Pa.1997) ("[O]verruling *Zahn* would not be absurd; arguably, it would be sensible."). Moreover, as shown in our discussion of the Working Paper of the Federal Courts Study Committee, some of those involved in drafting § 1367 both knew that the language chosen for § 1367 would overrule *Zahn* and approved of that result on policy grounds.

The legislative history therefore does not persuade us that we should refuse to follow what we believe is the clear meaning of the text of § 1367. We understand that our holding may be thought to say to Congress, as Judge Pollak put it in *Russ,* " 'We know what you meant to say, but you didn't quite say it. So the message from us in the judicial branch to you in the legislative branch is: Gotcha! And better luck next time.' " 961 F.Supp. at 820. We sympathize with Judge Pollak's position, but we do not feel ourselves at liberty to hold that *Zahn* survives § 1367. If courts could ignore the plain meaning of statutory texts because their legislative histories showed that some (or even many) of those who drafted and voted for the texts did not understand what they were doing, the plain meaning of many statutes, not only § 1367, would be in jeopardy.

### 2. Jurisdiction Based on Claims of Unnamed Class Members

■ The preceding section explains our agreement with Chrysler's argument that there is supplemental jurisdiction over the claims of unnamed class members when the claim of an individual named plaintiff satisfies the amount-in-controversy requirement. We now address Chrysler's additional argument that there is such supplemental jurisdiction when the claim of an *unnamed* class member satisfies the amount-in-controversy requirement. For the reasons that follow, we reject this argument.

In its opposition to the second remand in this case, Chrysler argued that an individual plaintiff's request for rescission should be valued (for purposes of amount in controversy) at the full original price of the vehicles in question, and that as a result, the claim of any class member owning more than three vehicles was likely to exceed $75,000. Chrysler then attached a declaration indicating that, according to its sales records, more than sixty potential class members in California owned more than nine Chrysler vehicles manufactured by the electrocoat process. But even if Chrysler is correct that several unnamed class members have claims for amounts in excess of $75,000, their claims do not provide a basis for diversity jurisdiction.

As discussed above, subsection (a) of § 1367 provides that a federal district court has supplemental jurisdiction over claims that are related to claims in "any civil action of which the district courts have original jurisdiction." "Original jurisdiction" in subsection (a) refers to jurisdiction established by looking for any claim in the complaint over which there is subject matter jurisdiction. But "original jurisdiction" does not refer to jurisdiction over claims not made-or not yet made-in the complaint. As also discussed above, a class action, when filed, includes only the claims of the named plaintiff or plaintiffs. The claims of unnamed class members are added to the action later, when the action is certified as a class under Rule 23. There thus cannot be "original jurisdiction" within the meaning of subsection (a) over the claims of unnamed class members and there is therefore no supplemental jurisdiction either.

Examining only the claims of named class plaintiffs for purposes of the amount-in-controversy requirement in diversity class actions mirrors the treatment of the complete diversity requirement. In both instances, subject matter jurisdiction depends only on the named plaintiffs. *See Supreme Tribe of Ben–Hur v. Cauble*, 255 U.S. 356, 366–67, 41 S.Ct. 338, 65 L.Ed. 673 (1921); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 162 (2d Cir. 1987). We also note that practical considerations support this result. If the claim of an unnamed class member could support removal of the entire action, a removing defendant might be entitled to discovery not merely from named, but also from unnamed, class members. Further, including the claims of unnamed class members is an "impractical and uncertain method of determining federal jurisdiction," *Tortola Restaurants, L.P. v. Kimberly–Clark Corp.*, 987 F.Supp. 1186, 1190 n. 4 (N.D.Cal.1997), because those members are free to opt out of the class, and because a denial of class certification would prevent the court from taking jurisdiction over the claims of the unnamed class members. Either of these two events would deprive the district court of jurisdiction over the entire class action, and could occur well into the litigation, after the expenditure of substantial time and effort by the parties and the district court. *See id.*

Finally, there is no reported decision that supports Chrysler's argument that the claims of unnamed class members can serve as a basis for diversity jurisdiction. Even those courts that have held that § 1367 overrules *Zahn* state that diversity jurisdiction in class actions must be based on a claim of a named plaintiff. *See In Re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d at 607 ("At least one *named* plaintiff must satisfy the jurisdictional minimum.") (emphasis added); *see also Tortola Restaurants*, 987 F.Supp. at

1190; *Amundson & Assocs. Art Studio, Ltd. v. National Council on Compensation Ins. Inc.*, 977 F.Supp. 1116, 1123 (D.Kan. 1997); *Sanderson, Thompson, Ratledge & Zimny v. AWACS, Inc.*, 958 F.Supp. 947, 961 (D.Del.1997). Secondary authorities agree. *See, e.g.*, 5 James Wm. Moore et al., Moore's Federal Practice § 23.07[3][c] at 23–47 (3d ed.1998) (hereinafter "Moore's") ("[E]ven if 28 U.S.C. § 1367 reverses *Zahn* . . . the statute does not permit supplemental jurisdiction over a class action in which *unnamed* class members meet the amount-in-controversy requirement, but the named plaintiff does not.") (emphasis in original).

3. Attorneys' Fees as a Basis for Amount in Controversy for Named Plaintiffs

Chrysler does not contend that any of the named plaintiffs in this case has an individual claim for damages that exceeds $75,000. Chrysler does contend, however, that the entirety of any award of attorneys' fees should be allocated to the named plaintiffs, and that this amount will exceed $75,000 per named plaintiff. We have no doubt that attorneys' fees would exceed $75,000 per named plaintiff in this case if removal to federal court were upheld and class certification were granted. But we do not agree with Chrysler that under California law an award of attorneys' fees in this class action would be allocated solely to the named plaintiffs.

This circuit specifically rejected Chrysler's argument almost twenty years ago, in *Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365 (9th Cir.1982). We articulated a single reason for our holding in *Goldberg*: allocating attorneys' fees solely to the named plaintiffs would "seriously undermine . . . the rule expressed by the Supreme Court in *Zahn*." *Id.* at 1367. However, because we hold today that § 1367 has overruled

*Zahn,* we must take another look at *Goldberg.*

*Abbott Laboratories* provides a useful starting place. There, the Fifth Circuit held that the named plaintiffs' claims satisfied the amount-in-controversy requirement because the attorneys' fees were allocated solely to the named plaintiffs, or "representative parties," under Louisiana law. *Abbott Laboratories* at 526; La.Code Civ. Proc art. 595; La.Rev.Stat. § 51:137. In so holding, the Fifth Circuit concluded that *Goldberg*

> sheds little light on the distinct policy choices behind Louisiana's decision regarding rights of recovery by class members. That a state chooses a set of rules that result in an award in excess of [the jurisdictional requirement] frustrates no policy of *Zahn.* Simply put, under the law of Louisiana the class representatives were entitled to fees. Their rights of recovery were not created by a judge's summing the discrete rights of class members.

*Id.* at 526–27.

■ In the case now before us, plaintiffs amended their complaints after the first remand to include claims under Cal.Civ. Proc.Code § 1021.5. That section states, in relevant part:

> Upon motion, a court may award attorneys' fees *to a successful party* against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement ... are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.

(Emphasis added). In its opposition to the second remand, Chrysler argued that the district court should attribute the § 1021.5 attorneys' fees only to the named plaintiffs. We disagree. Section 1021.5 states only that attorneys' fees go "to a successful party." In this respect, it is different from the Louisiana statute at issue in *Abbott Laboratories,* which states:

> The court may allow the *representative parties* their reasonable expenses of litigation, including attorney's fees, when as a result of the class action a fund is made available, or a recovery or compromise is had which is beneficial, to the class.

La.Code Civ. Proc. art. 595 (emphasis added).

California courts have stated that § 1021.5 awards are a "bounty" for plaintiffs who successfully litigate in the public interest, *see, e.g., Galante Vineyards v. Monterey Peninsula Water Mgmt. Dist.,* 60 Cal.App.4th 1109, 1127, 71 Cal.Rptr.2d 1 (1997), but they have not held that this "bounty" goes only to named plaintiffs in a class action. We therefore hold that, under this California law at least, attorneys' fees are not awarded solely to the named plaintiffs in a class action, and that they therefore cannot be allocated solely to those plaintiffs for purposes of amount in controversy. *See Spielman v. Genzyme Corp.,* 251 F.3d 1, 8 (1st Cir.2001) (refusing to allocate attorneys' fees in class action solely to the class representatives based on language in Massachusetts statute awarding attorneys fees to "petitioner" in a class action); *H & D Tire and Automotive–Hardware Inc. v. Pitney Bowes, Inc.,* 227 F.3d 326, 330 (5th Cir.2000) (same result for Connecticut statute awarding attorneys fees to "plaintiff" in a class action); *Cohen v. Office Depot, Inc.,* 204 F.3d 1069, 1080 & 1080 n. 11 (11th Cir.2000) (same result for Florida statutes awarding fees to "prevailing party" or "[a]ny person prevailing"); *Darden v. Ford Consumer Fin. Co.,* 200

F.3d 753, 758 n. 4 (11th Cir.2000) (same result for Georgia statute awarding fees to "any person who is injured").

We agree with Chrysler's argument that § 1367 provides supplemental jurisdiction over the jurisdictionally insufficient claims of unnamed class members if the named plaintiffs in the action have claims that satisfy the amount-in-controversy requirement. In that respect, we disagree with the district court. But because we hold that Cal. Civ. Proc. Code § 1021.5 requires any attorneys' fees awarded in this action to be divided among all members of the class, we do not agree that the named plaintiffs in this case satisfy the amount-in-controversy requirement. Since this is the sole argument advanced by Chrysler to show that the claims of the named plaintiffs satisfy the amount-in-controversy requirement, the district court did not err in finding that there was no supplemental jurisdiction under § 1367.

## B. Aggregation of Claims

In addition to arguing that § 1367 authorizes subject federal jurisdiction, Chrysler also argues that, for some claims in this case, the amount in controversy should be determined based on the aggregated value of those claims to all the class members. In particular, Chrysler argues that plaintiffs' claims for disgorgement and for punitive damages should be aggregated for purposes of the amount-in-controversy requirement. For the reasons that follow, we disagree.

### 1. Aggregation in General

The rule against aggregating the claims of multiple plaintiffs for purposes of determining the amount in controversy dates back at least to 1832. *See Oliver v. Alexander,* 31 U.S. (6 Pet.) 143, 148, 8 L.Ed. 349 (1832). More recently, in 1911, the Supreme Court held that two plaintiffs could not aggregate their claims arising out of distinct promissory notes payable to each plaintiff by the defendant. *See Troy Bank v. G.A. Whitehead & Co.,* 222 U.S. 39, 32 S.Ct. 9, 56 L.Ed. 81 (1911). In the Court's words, "[w]hen two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount." *Id.* at 40, 32 S.Ct. 9. The Court in *Troy Bank* also recognized an exception to the anti-aggregation rule that was nearly as old as the rule itself. "[W]hen several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount." *Id.* at 40–41, 32 S.Ct. 9 (citing *Shields v. Thomas,* 58 U.S. (17 How.) 3, 4–5 (1854)). Based on the exception, the Court held in *Troy Bank* that the two plaintiffs could aggregate their claims based on a vendor's lien that they owned jointly. *See Troy Bank,* 222 U.S. at 41, 32 S.Ct. 9; *see also Clark v. Paul Gray, Inc.,* 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001 (1939); *Pinel v. Pinel,* 240 U.S. 594, 36 S.Ct. 416, 60 L.Ed. 817 (1916).

■ In *Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), the Supreme Court rejected an argument that recent amendments to Rule 23 had changed the rule to allow aggregation in class actions. It reiterated that aggregation to meet the amount-in-controversy requirement was permissible only "(1) in cases in which a single plaintiff seeks to aggregate two or more of his own claims against a single defendant and (2) in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Id.* at 335, 89 S.Ct. 1053. It noted that the limitation on aggregation in class actions stemmed not from Rule 23 but from the Court's interpretation of the phrase "mat-

ter in controversy" in the basic diversity statute, 28 U.S.C. § 1332. *See id.* at 336, 89 S.Ct. 1053; *see also Zahn,* 414 U.S. at 299–301, 94 S.Ct. 505.

Our circuit has considered the anti-aggregation rule and the common interest exception in a number of cases. *See, e.g., Eagle v. American Tel. & Tel. Co.,* 769 F.2d 541, 547 (9th Cir.1984) (allowing aggregation of shareholders' claims for breach of fiduciary duty); *Snow v. Ford Motor Co.,* 561 F.2d 787, 790 (9th Cir.1977) (ban on aggregation applies to injunctive as well as compensatory relief); *United States v. Southern Pac. Transp. Co.,* 543 F.2d 676, 683 (9th Cir.1976) (denying aggregation of claims against railroad because rights to exclude trespassers arose "from the status of each [plaintiff] as [an] individual"); *Potrero Hill Cmty. Action Comm. v. Housing Auth.,* 410 F.2d 974, 978 (9th Cir.1969) (refusing to aggregate claims of tenants in a housing project because their claims arose "only from the status of each as individual lessee"); *Handy v. General Motors Corp.,* 518 F.2d 786, 787 (9th Cir.1975) (refusing to aggregate actions for "excess depreciation" due to automobile manufacturing defects); *Skokomish Indian Tribe v. France,* 269 F.2d 555, 559 (9th Cir.1959) (allowing aggregation of quiet title actions by tribe against numerous defendants).

The distinction between "separate and distinct" claims which cannot be aggregated, and "common and undivided" claims which can, is not always crystal-clear. *See Morrison v. Allstate Indemnity Co.,* 228 F.3d 1255, 1262 (11th Cir.2000) (noting criticism of distinction as "arcane and confusing"); 14B Charles A. Wright et al., Federal Practice and Procedure § 3704, at 127 (3d ed.1998) (describing aggregation rules as being in a "very unsatisfactory state"); 5 Moore's § 23.07[3][b] at 23–40 (calling distinction "elusive"). But we think it clear in this case that plaintiffs' claims for disgorgement and punitive damages do not implicate a "common and undivided interest," and therefore may not be aggregated for purposes of amount in controversy.

## 2. Aggregation of Disgorgement Claims

Aggregation is appropriate only where a defendant "owes an obligation to the group of plaintiffs as a group and not to the individuals severally." *Morrison,* 228 F.3d at 1262 (citing *Eagle,* 769 F.2d at 546). This understanding of aggregation is implicit in the two decisions in our circuit in which we have allowed aggregation. In the first, *Eagle v. American Tel. & Tel. Co.,* we held that the claims of a corporation's shareholders for breach of fiduciary duty could be aggregated as a "common and undivided interest" because shareholders cannot normally bring suit individually, but must instead institute a derivative suit on behalf of the corporation as a whole. *See* 769 F.2d at 545–46. In the second, *Skokomish Indian Tribe v. France,* we allowed an Indian tribe to aggregate its quiet title actions against multiple defendants in order to satisfy the amount-in-controversy requirement that then existed for federal question jurisdiction under 28 U.S.C. § 1331. Because the land at issue was contiguous and had been given to the tribe in a single treaty, and all the defendants derived title from a single source, we held that aggregation was proper. *See* 269 F.2d at 559.

Eagle and *Skokomish Indian Tribe* are paradigm aggregation cases, each involving "a single indivisible res" and concerning "matters that cannot be adjudicated without implicating the rights of everyone involved with the res." *Gilman v. BHC Secs., Inc.,* 104 F.3d 1418, 1423 (2d Cir. 1997) (quoting *Bishop v. General Motors Corp.,* 925 F.Supp. 294, 298 (D.N.J.1996)). In contrast to the claims in *Eagle* and

*Skokomish Indian Tribe,* plaintiffs' disgorgement claims in this case are each cognizable, calculable, and correctable individually. They rest on the common legal theory that Chrysler should give up the profit from its use of allegedly defective electrocoat finish techniques—a profit that can be separated into discrete and quantifiable sums attributable to each vehicle sold. Indeed, the amended complaint contends with some specificity that Chrysler made an additional profit of between $6.00 and $16.00 per vehicle by using the electrocoat technique. That sum can be traced to particular transactions involving individual plaintiffs, each of whom can sue Chrysler for disgorgement of this per-vehicle profit. *See Gilman,* 104 F.3d at 1423 (refusing to aggregate disgorgement claims that "could be adjudicated on an individual basis"); *Sellers v. O'Connell,* 701 F.2d 575, 579 (6th Cir.1983) (refusing to aggregate where each plaintiff sought a "fixed sum"); *Potrero Hill,* 410 F.2d at 978 (refusing to aggregate claims of tenants in a housing project because their claims derived from individual leases).

 Recovery by one plaintiff in this case would not, as a legal matter, either preclude or reduce recovery by another. *See Asociacion Nacional de Pescadores a Pequena Escala o Artesanales de Colombia (ANPAC) v. Dow Quimica de Colombia, S.A.,* 988 F.2d 559, 563 (5th Cir.1993) (denying aggregation where "one plaintiff's recovery is neither dependent upon, nor necessarily reduced by, another's"). Combining plaintiffs' relatively small individual disgorgement claims into a class action may well be necessary or advantageous as a matter of litigation economics, but that does not mean that Chrysler has an undivided obligation to the class within the meaning of the aggregation rule. *Contrast Berman v. Narragansett Racing Ass'n,* 414 F.2d 311, 313–15 (1st Cir.1969) (aggregating claims to money owed by racetracks pursuant to contract naming as beneficiary

"the group of owners whose horses win purses"). If the aggregation rule were otherwise, the amount-in-controversy requirement would be satisfied in all large-scale but small-dollar class actions in which individual litigation is difficult or impossible as a practical matter.

 Chrysler argues alternatively that any court-ordered disgorgement would create a "common fund" that would satisfy the requirements of the aggregation exception. This argument mistakes the nature of the common fund, which is an artifact of litigation, not an intrinsic characteristic of the claims. We agree with the Second Circuit's view that "[s]uch a fund is created to facilitate the litigation process in virtually every class action, and has nothing necessarily to do with whether the plaintiffs shared a pre-existing (pre-litigation) interest in the subject of the litigation." *Gilman,* 104 F.3d at 1427.

3. Punitive Damages

 It is well established that punitive damages are part of the amount in controversy in a civil action. *See Bell v. Preferred Life Assur. Society,* 320 U.S. 238, 240, 64 S.Ct. 5, 88 L.Ed. 15 (1943); *Goldberg,* 678 F.2d at 1367. Chrysler goes beyond that familiar proposition, however, and argues that punitive damages may be aggregated in a class action so that the totality of punitive damages, rather than the per-plaintiff share, constitutes the amount in controversy.

 When Chrysler made this argument in its opposition to the first remand, the district court rejected it because none of the plaintiffs' legal claims supported an award of punitive damages under California law. After the first remand, plaintiffs amended their complaint to add a claim under California's Consumer Legal Remedies Act, which would support an award of punitive damages. *See* Cal. Civ.Code

§ 1780. Plaintiffs did not explicitly request punitive damages, but the potential for such damages may still be considered for purposes of amount in controversy. *See Bell,* 320 U.S. at 240–43, 64 S.Ct. 5. When Chrysler opposed the second remand, it asked the district court to reconsider its refusal to aggregate punitive damages in light of the amended complaint. The district court refused, citing several district court opinions from our circuit holding that punitive damages in class action claims cannot be aggregated for purposes of amount in controversy. *See, e.g., Haisch v. Allstate Ins. Co.,* 942 F.Supp. 1245, 1251 (D.Ariz.1996); *Borgeson v. Archer–Daniels Midland Co.,* 909 F.Supp. 709, 719 (C.D.Cal.1995); *Smiley v. Citibank, N.A.,* 863 F.Supp. 1156, 1163 (C.D.Cal.1993). We agree with the district court.

It is true that punitive damages are different in some respects from compensatory damages, but they do not represent a "common and undivided interest" of the class. Punitive damages do not compensate plaintiffs for harm suffered. Rather, they punish the defendant for the wrongful conduct that has already occurred, and they deter the current defendant and potential defendants from engaging in similar conduct in the future. *See* 6 B.E. Witkin, *Summary of California Law,* Torts § 1327 at 785 (9th ed.1988). Because punitive damages do not compensate for harm, plaintiffs cannot calculate with precision the amount of any potential punitive damage award attributable to each class member. Moreover, the amount of the punitive damage award may well be influenced by the presence of a large class of plaintiffs, each of whom was wronged by the defendant in the same way.

Class members share an interest in a punitive damage award only because they have joined together for the purpose of litigation. This shared interest has "noth-ing to do with whether-prior to litigation-they jointly held a single title or right in which each possessed a common and undivided interest." *Gilman,* 104 F.3d at 1430. It is undisputed that the plaintiffs in this case could sue Chrysler individually on all the causes of action alleged in the current complaint. If they did so, nothing would preclude them from seeking and recovering punitive damages individually. This potential for multiple liability directly refutes the argument that there is some unitary res to which the plaintiffs jointly claim a right. *See In re Brand Name Prescription Drugs Antitrust Litig.,* 123 F.3d at 608–09. Just as in their claim for compensatory damages, plaintiffs join together as a class to assert punitive damages primarily as a matter of "convenience and economy." *Troy Bank,* 222 U.S. at 40, 32 S.Ct. 9.

We recognize that under California law one plaintiff's recovery of punitive damages can affect the amount recovered by another plaintiff against the same defendant. *See, e.g., Delos v. Farmers Group,* 93 Cal.App.3d 642, 667, 155 Cal.Rptr. 843 (Cal.Ct.App.1979). But this does not, in our view, alter the "separate and distinct" nature of the claims. Some courts have suggested that an identifying characteristic of "common and undivided" claims is that one plaintiff's failure to collect would increase the recovery of the remaining plaintiffs, *see, e.g., Sellers v. O'Connell,* 701 F.2d at 579, but we believe this expansive definition would undercut the rationale of *Snyder v. Harris.* The *Snyder* plaintiffs argued that since their entire class would be bound by the court's judgment, the phrase "matter in controversy" therefore must extend to encompass "all the claims of the entire class." 394 U.S. at 337, 89 S.Ct. 1053. The Supreme Court responded that while it was equally true that joined plaintiffs (as well as class action plaintiffs) were each bound by a court's

judgment, it was "in joinder cases of this very kind that the doctrine that distinct claims could not be aggregated was originally enunciated." *Id.* (citing *Troy Bank* and *Pinel*). Because the rationale for joinder is the possible effect of the proceeding on the party sought to be joined, we infer from the Court's statement that a party cannot show that claims are "common and undivided" simply by showing that the success of one plaintiffs' individual claim would affect the recovery of another.

Other circuits have in the past been willing to aggregate punitive damage claims for purposes of determining the amount in controversy. In particular, two circuit court opinions adopted (at least for a time) Chrysler's position, holding that punitive damage awards were the "common and undivided interest" of a group of plaintiffs. *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1358 (11th Cir. 1996); *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1333 (5th Cir.1995). *Tapscott* and *Allen* both rested in large part on the fact that, in their respective states, punitive damage awards could be characterized as fundamentally collective.

■ But *Tapscott* and *Allen* no longer appear to be good law even in their own circuits. *Tapscott* was overruled last year in *Cohen v. Office Depot, Inc.*, 204 F.3d at 1072 (concluding that *Tapscott* erred in departing from *Lindsey v. Alabama Tel. Co.*, 576 F.2d 593 (5th Cir.1978) (prohibiting aggregation of punitive awards), which governs the Eleventh Circuit as a pre-split decision of the Fifth Circuit); *see also Smith v. GTE Corp.*, 236 F.3d 1292, 1300 (11th Cir.2001); *Morrison*, 228 F.3d at 1264. The *Allen* panel cut back on its own holding in its denial of a petition for rehearing when it stressed that the holding was "not to be construed as a comment on any similar case that might arise under the law of any other state." 70 F.3d at 26; *see also Ard v. Transcontinental Gas Pipe Line Corp.*, 138 F.3d 596, 601 (5th Cir. 1998) (refusing to aggregate punitive damages based on limited holding of *Allen*). And recently, the Fifth Circuit has disclaimed *Allen's* holding outright. *See H & D Tire*, 227 F.3d at 330 (holding that *Lindsey* is the rule of the Fifth Circuit). At present, all of the circuits that have considered the issue appear to agree: punitive damages cannot be aggregated and attributed in total to each member of a class action for purposes of the amount-in-controversy requirement. *See Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1293 (10th Cir.2001); *Gilman*, 104 F.3d at 1430–31; *Anthony v. Security Pac. Fin. Servs., Inc.*, 75 F.3d 311, 315 (7th Cir. 1996).

### C. Establishment of Amount in Controversy as a Discovery Sanction

■ Chrysler makes one final argument as to why the amount-in-controversy requirement was satisfied in this case. It argues that plaintiffs' unwillingness to respond to discovery requests in state court entitled it to a factual finding by the district court that the amount in controversy was satisfied. In essence, Chrysler argues that the district court should have issued a discovery sanction in the form of a ruling that the amount-in-controversy requirement was satisfied.

Chrysler sought discovery relevant to the question of amount in controversy in federal court after the first removal, but the district court refused to grant such discovery. Chrysler then unsuccessfully sought mandamus from this court on that issue. Chrysler did not seek discovery in federal court after the second removal, and the sanction and fee award entered in connection with the second remand were unrelated to discovery in federal court.

Discovery is available in federal court to establish the presence of personal jurisdiction in that court, *see, e.g., Butcher's Union Local No. 498, United Food & Comm'l Workers v. SDC Investment, Inc.,* 788 F.2d 535, 540 (9th Cir.1986) ("Discovery should ordinarily be granted where 'pertinent facts bearing on the question of [personal] jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'") (citation omitted), and some courts have suggested that it may be appropriate to allow discovery relevant to jurisdictional amount prior to remanding, *see, e.g., McCraw v. Lyons,* 863 F.Supp. 430, 435 (W.D.Ky.1994). But that issue is not now before us. Rather, the question before us is whether plaintiffs' unwillingness to respond to discovery requests in *state court* provided a basis for a federal court to make an adverse factual finding against plaintiffs.

It is true that an appropriate discovery sanction for refusing to respond to discovery requests on jurisdictional facts can be an adverse finding on the factual issue. For example, in *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982), the Supreme Court sustained a sanction that found the facts necessary to establish personal jurisdiction over a recalcitrant defendant. Although we have not found a case directly on point, we see no reason why a court cannot, in an appropriate case, sanction a defendant who refuses to respond to appropriate discovery requests on a fact relevant to subject matter jurisdiction by entering an order establishing that fact as true.

Subject matter jurisdiction cannot be established by consent of the parties, and a lack of subject matter jurisdiction is a non-waivable defect. *See, e.g., Owen Equip. and Erection Co. v. Kroger,* 437 U.S. 365, 377 n. 21, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). But a sanction in the form of an adverse factual finding rests on neither consent nor waiver. Rather, it rests on the reasonable assumption that the party resisting discovery is doing so because the information sought is unfavorable to its interest. In such a case, the sanction merely serves as a mechanism for establishing facts that are being improperly hidden by the party resisting discovery. *See* Fed.R.Civ.P. 26(g)(3), 37(b)(2)(A); *Chilcutt v. United States,* 4 F.3d 1313, 1324 (5th Cir.1993).

In this case, however, the discovery abuse, if any, did not take place in the district court. Rather, it took place in California Superior Court. We are unaware of any authority, and Chrysler has supplied none, suggesting that a federal district court can sanction discovery abuse in state court when that court has neither found nor sanctioned such abuse itself. We therefore agree with the district court that it could not sanction plaintiffs for their failure to comply with Chrysler's state court discovery requests by finding the facts necessary to establish diversity jurisdiction.

### IV. The District Court's Order

Based on the foregoing, we conclude that the district court was correct to reject Chrysler's arguments in opposition to the second remand. We now address the district court's award of sanctions and attorneys' fees.

### A. Sanctions Under Rule 11

Federal Rule of Civil Procedure 11(b) states that an attorney or unrepresented party who presents a motion, pleading, or other paper to the district court "is certifying to the best of the person's knowledge" that, among other things:

> the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument

for the extension, modification, or reversal of existing law or the establishment of new law[.]

Rule 11(c) states that a district court may impose sanctions upon a party that violates any of the provisions of subsection (b).

■ The district court awarded sanctions based on Chrysler's second removal. In the words of the district court, "in reviewing the arguments presented by Chrysler in its notice for removal and in response to plaintiffs' motion for remand, this court finds that Chrysler in large part raised arguments that were clearly frivolous in light of this court's July 20 order and the decisions of other courts in the Ninth Circuit." Although the district court did not specifically mention Rule 11(b)(2), its use of the word "frivolous" indicates that its award of sanctions was based on its belief that Chrysler had violated this provision of the Rule.[6] We review a district court's decision to award sanctions under Rule 11 for abuse of discretion. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).

■ Under the circumstances, we reverse the award of sanctions against Chrysler. On the record in this case, we are sympathetic with the district court, which was forced by a persistent defendant to revisit nearly identical legal issues. At the same time, however, we recognize the difficulties faced by parties who seek to advance novel legal arguments in opposition to remand. Because of the general bar upon direct appellate review of district court remand orders, *see* 28 U.S.C. § 1447(d), Chrysler was forced either to abide by the district court's view of the law without an authoritative ruling from this circuit, or to risk sanctions by reiterating its arguments. We find it important that Chrysler's core argument-that supplemental jurisdiction can extend to the jurisdictionally insufficient claims of unnamed class members in a diversity class action-was a live issue both at the time of the second notice of removal and at the time of the district court's order granting sanctions.

Chrysler's second notice of removal was dated March 5, 1999, and the district court issued its sanctions order on May 28, 1999. By this time, the circuit split on the question of whether the Judicial Improvement Act of 1990 had overruled *Zahn* was not only well established, *see Meritcare*, 166 F.3d at 214 (1999); *Leonhardt*, 160 F.3d at 631 (1998); *Stromberg Metal Works*, 77 F.3d at 928 (1996); *Abbott Laboratories*, 51 F.3d at 529 (1995), but also a matter of vigorous debate in both practitioner and academic journals. *See, e.g.*, Supplemental Jurisdiction Update, 14 No. 4 *Federal Litigator* 4 (Jan.1999) (advising attorneys that until the Supreme Court revisits *Zahn*, "the question will remain open"); Richard D. Freer, *Toward a Principled Approach to Supplemental Jurisdiction in Diversity of Citizenship Cases*, 74 Ind. L.J. 5, 18 & n.79 (1998) (noting that "courts have not reached a consensus" on the effect of the amended § 1367, but that "[t]he overwhelming majority of academic commentary has criticized *Zahn*"). This court, of course, had not yet decided the question.

We therefore cannot agree with the district court that the arguments advanced in Chrysler's second notice of removal were "clearly frivolous." Indeed, we note that the Supreme Court granted certiorari on *Abbott Laboratories*, albeit after the district court's order in this case, *see* 120

---

**6.** We note that the district court's order appears to sanction defendant Chrysler for a violation of Rule 11(b)(2), even though Rule 11(c)(2)(A) states, "Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2)." Chrysler has not raised this argument on appeal, and we therefore consider it waived.

S.Ct. 525 (1999), and eventually affirmed the Fifth Circuit's position without opinion by an equally divided Court. *See* 120 S.Ct. 1578 (April 3, 2000). We believe that sanctioning a defendant for making (or even for repeating) a plausible argument that has failed previously in district court when the failure to make (or to repeat) that argument will potentially have the consequence of depriving the defendant of a favorable ruling from an appellate court is not an appropriate use of the sanction power. *Cf. Patrick v. Burget,* 486 U.S. 94, 108 S.Ct. 1658, 100 L.Ed.2d 83 (1988); *Lim v. Central DuPage Hosp.,* 972 F.2d 758 (7th Cir.1992); *Ezpeleta v. Sisters of Mercy Health Corp.,* 800 F.2d 119, 122 (7th Cir.1986). We therefore hold that the district court abused its discretion in sanctioning Chrysler in this case.

B. Attorneys' Fees Under § 1447(c)

▇▇▇▇ The district court ordered Chrysler to pay plaintiffs' attorneys' fees in connection with their second motion to remand. *See* 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."). We review attorneys' fee awards for abuse of discretion. *K.V. Mart Co. v. United Food & Comm'l Workers Int'l Union, Local 324,* 173 F.3d 1221, 1223 (9th Cir.1999). Under that standard, we affirm both the district court's award of fees and its calculation of their amount.

Because the standards for Rule 11 sanctions and § 1447(c) fee awards differ, our affirmance of attorneys' fees is not inconsistent with our reversal of sanctions. The standard for awarding attorneys' fees under § 1447(c) is "something less than that required for an award of attorney's fees under Rule 11." 16 Moore's § 107.41(3)(b) at 107–218.6; *see Moore v. Permanente Med. Group,* 981 F.2d at 446–47 (§ 1447(c) does not mirror Rule 11 because it is not

punitive and does not require bad faith). Although we "must reverse an award of attorneys' fees if the district court's exercise of discretion was grounded in a determination of law that we reject," *Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson,* 201 F.3d 1212, 1215 (9th Cir.2000), we have rejected only one of the legal determinations made by the district court in this case, and that rejection does not result in a determination that the remand order was incorrect. The court's remand order was correct as a matter of law, and we affirm its order awarding attorneys' fees. *See Balcorta,* 208 F.3d at 1112 (affirming fee award based on district court's correct decision to remand).

Chrysler also appeals the amount of the attorneys' fee award on the ground that plaintiffs' attorneys submitted insufficient documentation to support their fee request. However, plaintiffs' attorneys submitted supporting affidavits, and the district court explicitly found the fee requests sufficiently modest that more detailed documentation was unnecessary. We therefore find that the district court did not abuse its discretion in calculating the amount of the § 1447(d) fee award in this case.

REVERSED in part, AFFIRMED in part, and REMANDED. Each side to bear its own costs on appeal.