CHAPMAN FUNERAL HOME,
INC., et al., Plaintiffs,

v.

NATIONAL LINEN SERVICE,
Defendant.

No. CIV.A. 01–A–745–N.

United States District Court,
M.D. Alabama,
Northern Division.

Jan. 2, 2002.

Russell L. Irby, Russell L. Irby, Attorney at Law, Eufaula, AL, Robert G. Methvin, Jr., James M. Terrell, McCallum & Methvin, PC, Birmingham, AL, Charles A. McCallum, III, McCallum Law Firm LLC, Vestavia Hills, AL, for Plaintiffs.

W. Michael Atchinson, Joseph S. Miller, Rik S. Tozzi, Alfred H. Perkins, Jr., Starnes & Atchison, Birmingham, AL, for Defendants.

Leura Garrett Canary, U.S. Attorney's Office, Montgomery, AL, for Amicus.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, District Judge.

### I. FACTS AND PROCEDURAL HISTORY

This cause is before the court on a Motion to Remand, filed by the Plaintiff, Chapman Funeral Home, Inc., by and on behalf of a national class of similarly situated persons (Doc. # 4), a Motion to Deny Motion to Remand or in the Alternative to Deny Motion to Remand and to Certify Questions for Immediate Appeal Pursuant to 28 U.S.C. § 1292(b) (Doc. # 9) filed by National Linen Service, and a Motion for Leave to Propound Remand–Related Discovery, filed by the Plaintiff on November 19, 2001 (Doc. # 17).[1]

The Plaintiff originally filed its Complaint in the Circuit Court of Barbour County, Alabama, Clayton Division. The Plaintiff brings claims on behalf of itself and a class of persons similarly situated for breach of contract (Count One); fraud, suppression, and deceit (Count Two); unjust enrichment (Count Three); injunctive relief (Count Four); money paid by mistake (Count Five); and declaratory relief (Count Six).

On June 20, 2001, a Notice of Removal was filed in this court. Removal was predicated on the court's diversity jurisdiction. The Defendant asserts that because there is diversity of citizenship and the jurisdictional amount has been satisfied, regardless of the limitation of damages in the Plaintiff's Complaint, this court has jurisdiction under 28 U.S.C. § 1332. The Plaintiff subsequently filed a Motion to Remand, denying the existence of diversity jurisdiction, to which the Defendant responded.

This court issued a Memorandum Opinion and Order setting forth the relevant facts in this case, analyzing the parties'

---

1. The Plaintiff has asked to be allowed to conduct discovery to demonstrate that there is at least one non-diverse putative class member. As long as there is a completely diverse plaintiff who meets the amount in controversy, however, this court cannot conclude that such discovery would aid this court in resolving the present Motion to Remand and Motion to Deny Remand. Accordingly, the Motion for Leave to Propound Remand–Related Discovery is due to be DENIED.

contentions as to the existence of the amount in controversy in this case, concluding that no federal jurisdiction exists in this case, and giving the Defendant additional time in which to provide specific evidence relevant to the jurisdictional inquiry. *See* Memorandum Opinion and Order, November 9, 2001 (Doc. # 16).

For the reasons discussed, the Plaintiff's Motion to Remand is due to be DENIED, the Motion to Deny Remand is due to be GRANTED, and this court will certify the jurisdictional issue discussed in this Memorandum Opinion for interlocutory appeal, should the court be requested by the Plaintiff to do so by a specified date.

## II. *REMAND STANDARD*

█ Federal courts are courts of limited jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Burns v. Windsor Insurance Co.*, 31 F.3d 1092, 1095 (1994); *Wymbs v. Republican State Executive Committee*, 719 F.2d 1072, 1076 (11th Cir.1983), *cert. denied*, 465 U.S. 1103, 104 S.Ct. 1600, 80 L.Ed.2d 131 (1984). They may only hear cases that they have been authorized to hear by the Constitution or the Congress of the United States. *See Kokkonen*, 511 U.S. at 377, 114 S.Ct. 1673. The Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear. *See Burns*, 31 F.3d at 1095.

## III. *DISCUSSION*

By way of background, this court previously discussed and agreed with the Defendant's argument regarding the jurisdictional amount in this case based on the Plaintiff's request for prospective injunctive relief on behalf of the class. *See* Memorandum Opinion and Order, November 9, 2001 (Doc. # 16). That is, that although the Plaintiff has specifically limited the amount of money to be recovered by each putative class member to an amount not to exceed $74,500, the value of the equitable relief to some of the class members would exceed more than the jurisdictional amount.

█ In the case of "declaratory or injunctive relief, 'it is well established that the amount in controversy is measured by the value of the object of the litigation.' " *Ericsson Ge Mobile Comm., Inc. v. Motorola Comm. & Elec., Inc.*, 120 F.3d 216, 218 (11th Cir.1997) (quoting *Hunt v. Washington State Apple Adv. Comm'n*, 432 U.S. 333, 345, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)). An injunction is to be valued from the viewpoint of the plaintiff. *Id.* at 219.

In this case, the Defendant has presented evidence with respect to the obligation owed to the Defendant by businesses which are putative class members. The Defendant points to the Affidavit of Ben Novello ("Novello"), the Regional Vice President of Outback Steakhouse of Florida ("Outback") and to the Affidavit of Sam Johnson ("Johnson"), of the Darden Group ("Darden"), which owns and operates Red Lobster, The Olive Garden, Bahama Breeze, and Smokey Bones restaurants throughout the United States. According to Novello's affidavit, Outback has a contract with the Defendant which runs through March 2004. Novello further states that the environmental charge paid by Outback in the past averaged about $3,000.00 a month and that Outback is contractually obligated to pay these charges through March 2004. Should an injunction be imposed, Outback will not have to pay $93,000.00 in charges under its contract. Similarly, Johnson states that Darden has a contract which runs through April 2002, and has paid the Defendant an average of $3,000.00 a month for environmental charges. Johnson Affidavit.

This court previously concluded that this evidence establishes that the benefit of the injunctive relief sought by the Plaintiff may well exceed $75,000 for Outback and Darden. This court remains satisfied that this is a unique case in which there is a definable future obligation that would be discharged by the Plaintiff's requested injunctive relief. Accordingly, the Defendant has met its burden, under either a preponderance or legal certainty test, of establishing that an unnamed class member would recover an amount in excess of the jurisdictional amount, despite the limitation placed by the Plaintiff on damages. In addition, although this burden was met as to putative class members, rather than the named Plaintiff, this court has previously concluded that in the Eleventh Circuit the jurisdictional inquiry is not limited to the ability of the named plaintiff to meet the jurisdictional amount, based on *Morrison v. Allstate Indemnity Co.*, 228 F.3d 1255 (11th Cir.2000). In *Morrison*, the Eleventh Circuit remanded a case to the district court to allow the plaintiff to have the opportunity to prove that there were class members who have incurred more than $75,000 in damages. *Id.* at 1273.[2]

This court also concluded, however, that if jurisdiction were to be exercised on the basis of a putative class member meeting the jurisdictional amount, then that putative class member would also have to be diverse in citizenship in order for this court to have original jurisdiction over the claims of that class member. Absent such evidence, this court declined to decide whether jurisdiction could be exercised over a class based on a putative class member's meeting the jurisdictional

amount. The Defendant has now submitted evidence that the two putative class members which meet the jurisdictional amount are also completely diverse in citizenship from the Defendant. Consequently, this court is now squarely presented with the issue of whether diversity jurisdiction can be exercised over a class where one putative class member meets the jurisdictional requirement.

Under *Zahn v. Internat'l Paper Co.*, 414 U.S. 291, 295, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), each class member has to meet the jurisdictional amount. Four circuits have concluded, however, that the rule in *Zahn* no longer applies, due to the enactment of 28 U.S.C. § 1367, which allows for the exercise of supplemental jurisdiction over related claims for which there would otherwise be no subject matter jurisdiction. *See Rosmer v. Pfizer Inc.*, 263 F.3d 110 (4th Cir.2001); *Gibson v. Chrysler Corp.*, 261 F.3d 927 (9th Cir.2001); *Stromberg Metal Works, Inc. v. Press Mech., Inc.*, 77 F.3d 928, 930–31 (7th Cir.1996); and *In re Abbott Labs.*, 51 F.3d 524 (5th Cir.1995). Under this analysis, if a class member satisfies the jurisdictional amount, then supplemental jurisdiction can be exercised over the remaining class members. There is a circuit split on the issue of whether the rule in *Zahn* has been superceded by statute, however, with three circuits concluding that it has not. *See Trimble v. Asarco, Inc.*, 232 F.3d 946, 962 (8th Cir.2000); *Meritcare Inc. v. St. Paul Mercury Ins. Co.*, 166 F.3d 214, 218 (3d Cir.1999); and *Leonhardt v. Western Sugar Co.*, 160 F.3d 631, 640 (10th Cir.1998). The commentators are similarly split. *See 5 James W.*

---

**2.** The Ninth Circuit has discussed at length the difficulties presented by any consideration of putative class members meeting the jurisdictional amount. *See Gibson v. Chrysler Corp.*, 261 F.3d 927 (9th Cir.2001). Although the *Morrison* case was originally filed in fed-

eral district court, the Eleventh Circuit was willing to consider the amount in controversy of putative class members in the context of an originally filed suit. Therefore, this court has done so in this case which was removed to this court.

Moore et al., *Moore's Federal Practice* ¶ 23.07[3][c] (3d ed. 1998)(*Zahn* abrogated); 13 Charles A. Wright et al., *Federal Practice & Procedure* § 3523.1 (1998)(*Zahn* not abrogated). The Eleventh Circuit has not ruled on this issue. *See Morrison,* 228 F.3d at 1275. The United States Supreme Court also has not ruled on this issue. Although the Court accepted certiorari in the Fifth Circuit's *In re Abbott Labs.,* it affirmed that decision per curiam by an equally divided vote. *See Free v. Abbott Labs.,* 529 U.S. 333, 120 S.Ct. 1578, 146 L.Ed.2d 306 (2000).

The courts which have reasoned that § 1367 does not abrogate the Supreme Court's holding in *Zahn* have relied in whole or in part on the legislative history of § 1367. *See Leonhardt,* 160 F.3d at 640; *In re Ciprofloxacin Hydrochloride Antitrust Litigation,* 166 F.Supp.2d 740, 755 (E.D.N.Y.2001).

The Eleventh Circuit has recently clarified the role that legislative history plays in statutory interpretation. *See CBS Inc. v. PrimeTime 24 Joint Venture,* 245 F.3d 1217 (11th Cir.2001). The Eleventh Circuit pointed out that previous Eleventh Circuit cases have identified three instances in which a court may look to legislative history: where the statute is ambiguous, where applying the statute according to its plain meaning would lead to an absurd result, or where there is clear evidence of contrary legislative intent. *Id.* at 1226.

As to the instance in which an interpretation leads to an absurd result, the Eleventh Circuit has stated that it must truly be absurd, not just that the court would not have made the same policy decision. *Id.* at 1228. This court agrees with those courts which have determined that abrogation of *Zahn* would not be an absurd result. *See In re Abbott Labs.,* 51 F.3d at 529(citing commentary for the proposition that abrogating *Zahn* would harmonize case law and enable federal courts to resolve complex interstate disputes in mass tort situations); *see also Russ v. State Farm Mut. Auto. Ins. Co.,* 961 F.Supp. 808, 819 (E.D.Pa.1997).

■ As for the instance in which there is evidence of legislative intent which is contrary to the language of the statute, it is arguable that there is evidence of legislative intent to counter the plain language interpretation of § 1367. The Eleventh Circuit has, however, clarified that the statement that legislative intent can contradict the plain meaning of statutory language was dicta in a previous case and is contrary to the law of the Eleventh Circuit. *See CBS Inc.,* 245 F.3d at 1227. Where the meaning of the statute is clear, the court cannot resort to legislative history to undermine the plain meaning of the statutory language. *Id.* This court must, therefore, first determine whether the language of § 1367 is ambiguous before it can look to evidence of any legislative history.

■ At least one circuit has concluded that a statute is ambiguous if there is a split among the circuits as to the statute's interpretation. *See Leonhardt,* 160 F.3d at 638. The Eleventh Circuit does not, however, appear to have adopted such a rule in interpreting statutes. The Eleventh Circuit reasoned in *Guaranty Financial Services, Inc. v. Ryan,* 928 F.2d 994, 1004 n. 3 (11th Cir.1991) that its conclusion in that case that a particular statute was ambiguous was also supported by the fact that various courts were split on the issue. The court did not hold, however, that the split itself meant that the statute was ambiguous. It appears, therefore, that a determination of whether a statute is ambiguous must be made independent of any circuit split and that evidence of a circuit split is not itself sufficient to establish that a statute is ambiguous.

The court will now address the plain language of § 1367 to determine whether it is ambiguous. The supplemental jurisdiction statute provides as follows:

(a) ... in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure ....

 Under the plain language of this statute, if a district court has original jurisdiction in a case, then the court can exercise supplemental jurisdiction over related claims even though the court would not have been able to exercise original jurisdiction over those claims. The application of this language in the class action context could mean that if a court has original jurisdiction over the claims of one member of the class action, then it can exercise jurisdiction over claims for which it could not have exercised original jurisdiction. The question over which courts have split is whether a court can have original jurisdiction over a class action even if only one named class representative, or, in the Eleventh Circuit under *Morrison,* a putative class member, meets the requisite amount in controversy.

The circuits which have determined that § 1367 abrogates *Zahn* have concluded that on the face of the language in § 1367, a court can exercise original jurisdiction over one class member's claims and exercise supplemental jurisdiction over the remainder of the class. The Fifth Circuit concluded that the statute's first section vests federal courts with the power to hear supplemental claims generally, subject to limited exceptions set forth in the statute's second section, which do not include class actions. *In re Abbott Labs.,* 51 F.3d at 528. Therefore, the statute plainly contemplates that it will operate in the class action context. *Id.; see also Stromberg Metal Works, Inc.,* 77 F.3d at 930–31. This court agrees that the language of the statute is clear and unambiguous. If a court has original jurisdiction over a class member's claims, it can exercise supplemental jurisdiction over claims for which it does not have original jurisdiction, and there is no statutory exception to the operation of this rule.

At least one circuit concluding that *Zahn* has not been abrogated purports to base its interpretation on the clear and unambiguous language of the statute. The Tenth Circuit stated that a literal reading of § 1367(a) dictates that *Zahn* still is applicable. *See Leonhardt,* 160 F.3d at 640. The Tenth Circuit pointed out that § 1332 is the statutory provision which gives district courts original jurisdiction over diversity cases. *Id.* The court further reasoned that Congress has agreed with the Supreme Court's determination that "matter in controversy" does not include aggregated claims. *Id.* Therefore, according to the Tenth Circuit, in § 1367(a) "Congress expressly excepted claims brought under § 1332 and its well-understood definition of 'matter in controversy.'" *Id.* Therefore, according to the Tenth Circuit, § 1367(a) and (b) can be read to require each plaintiff to satisfy

*Zahn* in order for the court to have jurisdiction. *Id.* The Tenth Circuit also went on to conclude that because the circuits are split on the issue, the statute is ambiguous, and that the Tenth Circuit's interpretation is supported by the legislative history. *Id.*

The Tenth Circuit's reasoning has been interpreted by various courts in a way that may not have been intended by the Tenth Circuit. The Fourth and Ninth Circuits apparently interpret the Tenth Circuit as stating that § 1367(a) has no applicability in diversity cases. *See Rosmer,* 263 F.3d at 115; *Gibson,* 261 F.3d at 935. According to the Fourth Circuit, the text of § 1367 itself makes it clear that the term "original jurisdiction" in 1367(a) includes diversity cases, because the exceptions listed in 1367(b) apply only to cases brought under § 1332(b). *Id.* This court certainly agrees with this textual analysis and agrees that § 1367(a) clearly applies to diversity cases. It seems likely to this court, however, that the Tenth Circuit did not mean to say that § 1367(a) has no applicability in diversity cases, but meant instead that the supplemental jurisdiction statute could only apply in § 1332 class actions where the rule against aggregation of claims was satisfied.

Even under this view of the Tenth Circuit's reasoning, this court does not agree with the Tenth Circuit's analysis. The Tenth Circuit has concluded that because § 1367(a) refers to "original jurisdiction," Congress intended to import *Zahn* into § 1367(a). What the statute says, however, based on a common sense reading, is that in any case in which there are claims upon which to base original jurisdiction, the court can exercise supplemental jurisdiction over other claims sufficiently related to the claims over which it has original jurisdiction. The aggregation principle

discussed by the Tenth Circuit would remain undisturbed in the majority of cases. That is, there is no basis in § 1367(a) for concluding, for example in a case involving two single plaintiffs, that the monetary amount claimed by plaintiff A which does not arise from a common, undivided right with the claim of plaintiff B, can be combined with plaintiff B's claim so as to constitute the requisite amount in controversy. Under such a scenario there would still be no original jurisdiction over plaintiff A's claim from which to exercise supplemental jurisdiction under § 1367(a).

The question arises under circumstances in which class plaintiff A has the requisite jurisdictional amount in controversy, but class plaintiff B does not. Under the plain language of the statute, a court with original jurisdiction over class plaintiff A's claims can exercise supplemental jurisdiction over class plaintiff B's related claims.

To say that Congress, by using "original jurisdiction" meant "original jurisdiction as defined by *Zahn,*" is to conclude that Congress intended for "original jurisdiction" to apply differently to diversity class actions than to any other type of case. The support the Tenth Circuit points to for such a proposition is the language in § 1367(b) wherein Congress stated that jurisdiction is not to be exercised over particular claims when exercising jurisdiction would be inconsistent with the jurisdictional requirements of section 1332. The exceptions in § 1367(b), however, do not include Rule 23, the rule governing class actions. Although this court certainly agrees with the Tenth Circuit that Congress was expressing a concern for traditional jurisdictional requirements, Congress' statement occurs within the context of specific exceptions to the rule, none of which include Rule 23.[3]

**3.** The Ninth Circuit has also reasoned that the

statement in § 1367(b) relied on by the Tenth

If Congress wanted courts to treat diversity class actions differently from other cases when applying the supplemental jurisdiction statute, it certainly could have created an exception for class actions. This court agrees with the Fifth Circuit's conclusion that because Congress did not except Rule 23 from the operation of the supplemental jurisdiction statute, 1367(a) applies to class actions. *See In re Abbott Labs.*, 51 F.3d at 529. As earlier stated, this court's reading of the plain language of the statute is that in any case in which this court has original jurisdiction, the court can exercise supplemental jurisdiction over the claims of plaintiffs over which the court does not have original jurisdiction. Congress' failure to list Rule 23 as an exception to this plain language is controlling. *See CBS Inc.*, 245 F.3d at 1226 (citing authority for the proposition that where Congress knows how to say something but chooses not to, its silence is controlling).

This court also is not persuaded that the position that *Zahn* has continued vitality is correct merely because Congress referred in § 1367(a) to "any civil action" of which the courts have original jurisdiction. The reference to "any civil action" does not mean that supplemental jurisdiction can only be exercised if the court first has original jurisdiction over the entire class. The statute itself relates the supplemental jurisdiction claims to the original jurisdiction claims. *See* 28 U.S.C. § 1367(a). In other words, while original jurisdiction is exercised in the "civil action," it is exercised on the basis of particular claims. It is the relatedness of the claims to other claims which allows for the exercise of supplemental jurisdiction.

■ The Ninth Circuit has also rejected the idea that "civil action" means that supplemental jurisdiction can only be exercised where original jurisdiction existed as to all of the claims in the complaint as it was originally filed. As the Ninth Circuit put it, if all claims under the diversity statute have to be within the "original jurisdiction" of the court at the time the complaint is filed, "original jurisdiction" has to mean something different when applied in a diversity case than when applied in a federal question case where supplemental jurisdiction can be exercised, for example, over state law claims where there is also a claim arising under federal law. Attributing a different meaning to a term used in multiple sections of a statute violates a canon of statutory construction. *See CBS Inc.*, 245 F.3d at 1226.

An interpretation of § 1367 which would require that there be original jurisdiction over all of the original claims before supplemental jurisdiction can be exercised also, in the Ninth Circuit's view, is inconsistent with the language of the statute. The statute, in 1367(b), excepts from 1367(a) parties joined under Rule 20. The exclusion is only necessary if 1367(a) would ordinarily cover Rule 20 joinders. As the Ninth Circuit points out, defendants joined under Rule 20 are often named in the original complaint. *Gibson*, 261 F.3d at 936. Therefore, the interpretation that supplemental jurisdiction only applies if the court has original jurisdiction over the claims as asserted in the complaint would render § 1367(b) superfluous, at least in part. This interpretation, therefore, violates a canon of statutory construction. *See United States v. McLymont*, 45 F.3d 400, 401 (11th Cir.1995)(per curiam)(court

Circuit actually preserves an aspect of supplemental jurisdiction that would have otherwise been lost, supplemental jurisdiction over a compulsory counterclaim by a plaintiff against a third-party defendant, and is not a mere statement of policy. *Gibson*, 261 F.3d at 938.

must read a statute to give each of its provisions full effect).

Under the plain language of the statute, this court must conclude that *Zahn* is statutorily abrogated. Consequently, the court will not engage in an analysis of the legislative history of the statute because

> [w]hen a statute is passed by Congress, it is the text of the statute, and not statements put in some committee report or made on the floor-and certainly not someone's understanding of the circumstances which gave rise to the legislation-that has been voted on and approved by the people's elected representatives for inclusion in our country's laws. The language of our laws is the law.

*CBS Inc.*, 245 F.3d at 1227. Under the only reasonable interpretation of the statutory language passed by Congress, if the court has original jurisdiction over the claims of a class member, supplemental jurisdiction can be exercised over the claims of putative class members over whom the court lacks original jurisdiction because those putative class members failed to claim the requisite amount in controversy. Under this interpretation of § 1367, and under *Morrison*, this court has original jurisdiction in this case based on the amount in controversy claimed by two putative class members and has supplemental jurisdiction over the other plaintiffs' claims.

## IV. *CONCLUSION*

For the reasons discussed above, it is hereby ORDERED as follows:

1. The Motion to Remand (Doc. # 4) is DENIED.

2. The Motion to Deny Remand (Doc. # 9) is GRANTED. The Alternative Motion to Deny Motion to Remand and to Certify Questions for Immediate Appeal Pursuant to 28 U.S.C. § 1292(b) is GRANTED to the extent that the Plaintiff will be given an opportunity to seek certification of an appeal. As indicated in this Memorandum Opinion, the courts, commentators, and the Supreme Court itself is split on the issue of whether *Zahn* has been statutorily abrogated. This court finds, therefore, that this case may be an appropriate one to certify for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Because the court has decided to retain jurisdiction, however, it will give the Plaintiff until January 16, 2002 to indicate whether the Plaintiff chooses to seek certification of this case for interlocutory appeal.

3. The Motion for Leave to Propound Remand–Related Discovery (Doc. # 17) is DENIED.