Elsie M. FOREST, Thomas H. Wiess and Angela H. Wiess, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

PENN TREATY AMERICAN CORPORATION and Penn Treaty Network America Insurance Company, Defendants.

No. 5:03–CV45OC10GRJ.

United States District Court, M.D. Florida, Ocala Division.

June 26, 2003.

Anthony A.B. Dogali, Forizs & Dogali, P.L., Tampa, for Elsie M. Forest, on behalf of themselves and all others similarly situated, Thomas H. Wiess, on behalf of themselves and all others similarly situated, Angela H. Wiess, on behalf of themselves and all others similarly situated, plaintiffs.

Edwin C. Cluster, Ayres, Cluster, Curry, McCall, Collins & Fuller, P.A., Ocala, David L. Yohai, Mindy J. Spector, John Mastando, Weil, Gotshal & Manges, LLP, New York, NY, for Penn Treaty American Corp., Penn Treaty Network America Insurance Co., defendants.

### *ORDER*

HODGES, Senior District Judge.

The United States Magistrate Judge has issued a report (Doc. 46) recommending that the Class Plaintiffs' Motion to Remand To State Court (Doc. 21) be granted,

and that this case be remanded to the Circuit Court for the Fifth Judicial Circuit in and for Marion County, Florida. Neither party has objected to the report and recommendation of the Magistrate Judge and the time for objecting has elapsed.

Accordingly, upon due consideration, and upon an independent examination of the file, it is ordered that:

(1) the report and recommendation of the Magistrate Judge (Doc. 46) is adopted, confirmed, and made a part hereof;

(2) the Class Plaintiffs' Motion To Remand To State Court (Doc. 21) is GRANTED, and this case is remanded to the Circuit Court for the Fifth Judicial Circuit in and for Marion County, Florida; and,

(3) the Clerk is directed, pursuant to 28 U.S.C. § 1447(c), to mail a certified copy of this Order to the Clerk of the Fifth Judicial Circuit Court in and for Marion County, Florida, and to close the file on this matter.

IT IS SO ORDERED.

## *REPORT AND RECOMMENDATION*[1]

JONES, United States Magistrate Judge.

Pending before the Court is the Class Plaintiffs' Motion To Remand To State Court ("Motion to Remand") (Doc. 21). The Defendants have filed a response in opposition to the Plaintiffs' motion (Doc. 29), and the matter is now ripe for review. For the following reasons, the Class Plaintiffs' Motion To Remand To State Court is due to be **GRANTED.**

## I. *INTRODUCTION AND BACKGROUND*

On January 10, 2003, in the Circuit Court of the Fifth Judicial Circuit, in and for Marion County, Florida, the Plaintiffs, individually and on behalf of all others similarly situated,[2] filed a Complaint against the Defendants alleging claims for breach of fiduciary duty, breach of implied duty of good faith and fair dealing in an insurance contract, negligent misrepresentation, fraudulent misrepresentation, restitution and reformation. (Doc. 2 at 1–2, 41.) The Plaintiffs allege that, from January 1, 1997 through the present, the Defendants induced the named and putative class Plaintiffs to purchase certain types of "long-term care" insurance policies at a below-market rate, only to substantially increase the premiums for these policies after the policies were purchased and the policyholders became otherwise "uninsurable" by other companies. (Doc. 2 at 4.) The Plaintiffs assert that the insurance premiums were increased despite the Defendants' assurances that the policies were "guaranteed renewable" and that the premiums would "not increase with age." (Doc. 2 at 2–3.)

The claims of the three named Plaintiffs in this matter are illustrative. Plaintiff Elsie M. Forest suffers from diabetes, bulging spinal disks, bone spurs, high cholesterol, and colitis. (Doc. 2 at 34.) She has been retired since the late 1980s and cares for her infirmed husband. Although she purchased her insurance policy at a rate of $145.86 per month in 1999, Plaintiff Forest's insurance premiums have allegedly increased by 35% to $196.91 per month. (Doc. 2 at 34.)

---

1. Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

2. According to the Defendants, the putative class includes approximately 30,000 policy holders.

Plaintiffs Thomas H. Weiss and Angela H. Weiss are husband and wife. Mr. Weiss is 79 years of age, and Mrs. Weiss is 76 years of age. (Doc. 2 at 35.) They live on a fixed income of $2,000 per month and both have "significant health problems." (Doc. 2 at 35–36.) For example, subsequent to purchasing his insurance policy, Mr. Weiss had open heart surgery and ten angioplasties, and has received treatment for Alzheimer's disease. (Doc. 2 at 36.) Mr. and Mrs. Weiss purchased long-term care policies from the Defendants in 1999. In 2002, Mr. and Mrs. Weiss were notified that their premiums were being raised. All three named Plaintiffs allege that, due to their advancing age and health problems they are now unable to obtain long-term care insurance coverage with an alternate provider, forcing them to retain their policies with the Defendants.

As disclosed in the Complaint, the Plaintiffs primarily are seeking only two forms of relief: (1) the reformation of the insurance contract[3] and (2) a money damage award in the amount of the increased premium payments paid to the Defendants less the amount that the Plaintiffs originally agreed to pay.[4] Thus, the monetary award sought by the Plaintiffs is the difference between the price of the insurance premiums at the time of purchase and the price of the insurance premiums at the "unreasonable" higher premium rate.

The Defendants removed this matter to federal court on February 6, 2003, on the basis of diversity of citizenship jurisdiction, 28 U.S.C. § 1332. (Doc. 1.) Shortly thereafter, the Plaintiffs filed the current Motion to Remand, alleging that the Plaintiffs' claims are insufficient to meet the amount in controversy threshold. (Doc. 21.) On April 29, 2003, the Court heard oral argument on the Motion to Remand.

### A. Removal Standards

It is "by now axiomatic that the inferior federal courts are courts of limited jurisdiction," empowered "to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution and which have been entrusted to them by a jurisdictional grant authorized by Congress."[5] A defendant may "remove a case to federal court only if the district court could have had jurisdiction over the case had the case been brought there originally."[6] District courts have original jurisdiction over diversity cases, pursuant to 28 U.S.C. § 1332, and matters arising under federal law, pursuant to 28 U.S.C. § 1331.[7]

Where a plaintiff has objected to a defendant's removal, the burden of proof is on the defendant, as the removing party, to prove by a preponderance of the evidence that the action was properly removed.[8] Because removal jurisdiction

---

**3.** The Plaintiffs seek equitable relief, requesting that the Court "reform the contract to express the intent of Class Plaintiffs and putative class members." (Doc. 2 at 47, 67.)

**4.** The relief requested by the Plaintiffs, as alleged in the Complaint, includes, but is not limited to, damages in an amount in excess of $15,000. The Plaintiffs, however, have sought to limit their damages to an amount not to exceed $75,000. (Doc. 2 at 7.)

**5.** *University of South Alabama v. The American Tobacco Company,* 168 F.3d 405, 409 (11th Cir.1999).

**6.** *Whitt v. Sherman International Corp.,* 147 F.3d 1325, 1329 (11th Cir.1998).

**7.** *Id.*

**8.** *Woods v. Firestone Tire & Rubber Co.,* 560 F.Supp. 588, 590 (S.D.Fla.1983). There is a disagreement between the parties as to the correct standard to apply in examining removal jurisdiction. While the Plaintiffs apply a "legal certainty" standard, the Defendants urge the Court to apply a preponderance of the evidence standard. It is clear, however, that "a defendant seeking removal based on diversity of jurisdiction must prove by a pre-

raises significant federalism concerns, federal courts are directed to construe removal statutes strictly and doubts about jurisdiction should be resolved in favor of remand to state court. Indeed, "[a] presumption in favor of remand is necessary because if a federal court reaches the merits of a pending motion in a removed case where subject matter jurisdiction may be lacking it deprives a state court of its right under the Constitution to resolve controversies in its own courts." [9]

 The Defendants allege that this Court has jurisdiction in the instant case pursuant to 28 U.S.C. § 1332, the diversity jurisdiction statute. Under § 1332, a district court has original jurisdiction over "any civil case if (1) the parties are citizens of different States and (2) the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs." [10] At issue in the current case is the latter requirement, as the Plaintiffs contend that their claims for damages fall short of the

$75,000 jurisdictional threshold. In determining whether the $75,000 jurisdictional threshold is met, the Court must look solely to the amount in controversy at the time of removal. [11]

## B. Issues Presented

It is uncontested that the claims of the named Plaintiffs are insufficient to meet the amount in controversy requirement. [12] The Defendants, however, in attempting to establish that the amount in controversy threshold is met in this case, do not rely on the claims of the named Plaintiffs, but rather rely on the claims of one unnamed putative class member whose restitution claim allegedly is sufficient to establish subject matter jurisdiction for all Plaintiffs in this case. (Doc. 29 at 9.)

The Defendants' argument raises several issues, some of which are unsettled under existing caselaw.

The first issue raised by the Defendants' motion is whether the claims of all plain-

---

ponderance of the evidence that the amount in controversy exceeds the $75, 000 jurisdictional requirement." *See Leonard v. Enterprise Rent A Car*, 279 F.3d 967, 972 (11th Cir.2002); *see also Kirkland v. Midland Mortgage Company*, 243 F.3d 1277, 1281 n. 5 (11th Cir.2001). Indeed, although the case law is somewhat confusing on this issue, with courts occasionally using the standards interchangeably, there is an important distinction between the "legal certainty" standard and the "preponderance of the evidence standard." The "preponderance of the evidence" standard is applicable in those cases where the defendant exercises his statutory right to remove a case to federal court, as the defendant has removed the case to federal court and therefore has the burden to establish the basis for jurisdiction upon removal. On the other hand, a plaintiff "is still the master of his own claim," and, in cases that originate in federal court, the court, in evaluating a plaintiff's claim for damages and whether that claim is due to be dismissed for lack of subject matter jurisdiction, must determine whether it appears to a "legal certainty that plaintiff's claim is actually for less than the jurisdiction-

al amount." *Burns v. Windsor Insurance Co.*, 31 F.3d 1092, 1094 (11th Cir.1994). Thus, the court must utilize the "legal certainty" standard in determining whether to dismiss an action for lack of subject matter jurisdiction, but employ the "preponderance of the evidence" standard in evaluating whether removal is proper.

9. *Klempner v. Northwestern Mutual Life Insurance Company*, 196 F.Supp.2d 1233, 1237 (S.D.Fla.2001) (internal citations omitted).

10. *Morrison v. Allstate Indemnity Company*, 228 F.3d 1255, 1261 (11th Cir.2000).

11. *Keene Corp. v. United States*, 508 U.S. 200, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993).

12. The named Plaintiffs expressly allege in the Complaint that their damages do not exceed $75,000. (Doc. 2 at 7.) Moreover, in oral argument, the parties conceded that the Court's subject matter jurisdiction in this case would arise, if at all, from an unnamed putative class Plaintiff.

tiffs must exceed the $75,000 threshold or whether the district court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over the remaining plaintiffs in the class action, once at least one of the claims of the named plaintiffs exceeds the jurisdictional amount. As discussed below, in order for Defendants to prevail on this issue the Court must conclude that the Supreme Court's holding in *Zahn v. International Paper Company* [13] was overruled by the 1990 amendments to 28 U.S.C. § 1367.

Secondly, assuming that § 1367 overrules *Zahn*, the Court must then determine whether the amount of damages claimed by an *unnamed plaintiff* can be used to satisfy the amount in controversy requirement and, thus, trigger § 1367 supplemental jurisdiction.

Finally, assuming that the amount of damages claimed by an unnamed plaintiff could be used to satisfy the amount in controversy, the Court must determine whether the unnamed Plaintiff in the current case can actually meet the $75,000 threshold.

While the Court determines that ultimately the Defendants have failed to establish that the claim of any plaintiff—even that of an unnamed plaintiff—is in excess of $75,000, the Court will, nonetheless, address each of the issues raised by Defendants.

## II. DISCUSSION

The Court will first address the issue of whether § 1367 can be used to establish supplemental jurisdiction assuming the Plaintiff could establish that the claim of one plaintiff was in excess of $75,000.

### A. Supplemental Jurisdiction

Even if the Defendants could successfully demonstrate that, in the instant case, there is an unnamed plaintiff with claims sufficient to trigger diversity jurisdiction—thus establishing that there is original jurisdiction as to the unnamed class member—Defendants still must prove that this Court has supplemental jurisdiction over the claims of the remaining named plaintiffs and putative class members pursuant to 28 U.S.C. § 1367. [14]

The current state of the law relating to the issue of supplemental jurisdiction in the class action context "has vexed and split federal courts across the country." [15] Indeed, the Defendants, in attempting to prove supplemental jurisdiction, raise an important and unresolved issue: whether the 1990 amendments to the supplemental jurisdiction statute, 28 U.S.C. § 1367, overruled the Supreme Court's decision in *Zahn v. International Paper Co.* [16]

In *Zahn*, the Supreme Court held that "in a diversity suit, a class action...is maintainable only when every member of the class, whether an appearing party or not, meets the...jurisdictional amount requirement of 28 U.S.C. § 1332." [17] Subse-

---

**13.** 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973).

**14.** Pursuant to 28 U.S.C. § 1367, a district court may exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

**15.** *Klempner v. Northwestern Mutual Life Insurance Company,* 196 F.Supp.2d 1233, 1236

(S.D.Fla.2001) (Judge Middlebrooks avoided entering the *"Zahn*–Section 1367 fray,"* however, as he found that the court lacked original jurisdiction—a necessary prerequisite to establishing supplemental jurisdiction).

**16.** 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973).

**17.** *Id.* at 302, 94 S.Ct. 505.

quent to the *Zahn* decision, in 1990, Congress enacted the Judicial Improvements Act, which allows for the exercise of supplemental jurisdiction over related claims for which there would otherwise be no subject matter jurisdiction.[18] Since the 1990 amendments were enacted, courts have grappled with whether § 1367 effectively overruled the Supreme Court's holding in *Zahn*, with varying results. Indeed, a review of the relevant caselaw reveals an even circuit split on the issue of whether all class action plaintiffs, or only one plaintiff, must meet the amount in controversy for subject matter jurisdiction purposes.[19] Neither the Eleventh Circuit, nor the Supreme Court have squarely addressed the issue.[20]

Upon a thorough review of the caselaw, the Court concludes that utilizing the plain meaning of the statute, the effect of *Zahn* has been abrogated by § 1367.

Those courts which have held that *Zahn* was not abrogated by § 1367 relied in whole or in part on the legislative history of § 1367. On the other hand courts that have held that § 1367 abrogated *Zahn* have relied on the plain meaning of the words in the statute. For example, in *Chapman Funeral Home, Inc. v. National Linen Service,*[21] the Middle District of Alabama, declined to "resort to legislative history to undermine the plain meaning of the statutory language." Instead, the *Chapman Funeral Home* court relied upon *CBS Inc. v. PrimeTime 24 Joint Venture,*[22] in which the Eleventh Circuit stated that district courts may only look to legislative history (1) where the statute is ambiguous, or (2) where applying the statute according to its meaning would lead to an absurd result.[23]

Neither of these situations applies here. In the current case, applying the plain meaning of § 1367 would not lead to an absurd result, because, as noted by the Fifth Circuit in *In re Abbott Labs.,* a finding that § 1367 supersedes *Zahn* harmon-

---

**18.** *Chapman Funeral Home, Inc. v. National Linen Service,* 178 F.Supp.2d 1247, 1250 (M.D.Ala.).

**19.** Three courts of appeals have held that *Zahn* remains good law. *See Trimble v. Asarco, Inc.,* 232 F.3d 946 (8th Cir.2000); *Meritcare, Inc. v. St. Paul Mercury Insurance Co.,* 166 F.3d 214 (3rd Cir.1999); and *Leonhardt v. Western Sugar Co.,* 160 F.3d 631 (10th Cir.1998). Four courts have concluded that *Zahn* was superceded by § 1367. *See Rosmer v. Pfizer Inc.,* 263 F.3d 110 (4th Cir.2001); *Gibson v. Chrysler Corp.,* 261 F.3d 927 (9th Cir.2001); *Stromberg Metal Works v. Press Mechanical, Inc.,* 77 F.3d 928 (7th Cir.1996); and *In re Abbott Labs.,* 51 F.3d 524 (5th Cir.1995).

The Supreme Court granted certiorari to review the Fifth Circuit Court of Appeals' decision in *In re Abbott Laboratories,* 51 F.3d 524 (5th Cir.1995) (finding that § 1367 overruled *Zahn* ). The Supreme Court, however, was evenly divided in its affirmance of the court's decision. *Free v. Abbott Laboratories, Inc.,* 529 U.S. 333, 120 S.Ct. 1578, 146 L.Ed.2d 306 (2000). Thus, the Supreme Court's decision on this issue has no precedential value. *See Rutledge v. United States,* 517 U.S. 292, 304, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996).

**20.** *See, Morrison,* 228 F.3d 1255, 1262 n. 5 (11th Cir.2000) (noting the "even circuit split" on the issue of whether 28 U.S.C. § 1367 overrules the Supreme Court's holding in *Zahn* without determining the issue).

**21.** 178 F.Supp.2d 1247.

**22.** 245 F.3d 1217 (11th Cir.2001).

**23.** There was a third situation, expressed in dicta in a previous Eleventh Circuit case, which permitted courts to look to legislative history where there is clear evidence of contrary legislative intent. However, as noted by the court in *Chapman Funeral Home, Inc.,* the Eleventh Circuit has since advised that it is "contrary to the law of the Eleventh Circuit" to consider contrary legislative intent. *Id.* at 1251; *see also Chapman Funeral Home, Inc.,* 178 F.Supp.2d at 1251. Accordingly, the Court will not consider this factor.

izes case law and enables federal courts to resolve complex interstate disputes in mass tort situations.[24]

Here, the Court agrees that the meaning of the statute is clear and unambiguous and there is no need to resort to legislative history. An examination of the statute reveals that while the first section of § 1367 "vests federal courts with the power to hear supplemental claims generally," the second section of the statute delineates specific exceptions to the court's exercise of supplemental jurisdiction.[25] Because, in the second section of § 1367, Congress did not except class actions from the supplemental jurisdiction statute, courts have found, and this Court agrees, that the "statute plainly contemplates that it will operate in the class action context."[26] Absent ambiguity in the statute, then, the Court must apply the plain meaning of the statute, without looking to legislative history or legislative intent.

██ Accordingly, the Court concludes that § 1367 supercedes the Supreme Court's holding in *Zahn.* Once it is established that a district court has original jurisdiction in a class action suit, the court can exercise supplemental jurisdiction over claims for which it does not have original jurisdiction.

This determination does not resolve the present motion because the Defendants, here, rely upon the claim of an *unnamed* plaintiff in seeking to establish original jurisdiction. Therefore, the Court must next determine whether the claim of an unnamed plaintiff can be used in the Eleventh Circuit to establish the jurisdictional threshold.

## B. *Consideration of an Unnamed Plaintiff's Claim*

The Plaintiffs contend that the Court may not consider the damages of unnamed, unidentified putative class members in determining whether the $75,000 amount in controversy requirement, as set forth in 28 U.S.C. § 1332, is met. (Doc. 22 at 3–4.) Rather, in determining whether there is subject matter jurisdiction, the Court must determine solely whether any of the *named* plaintiffs independently can satisfy the amount in controversy requirement. (Doc. 22 at 5.)

Several courts have addressed the issue of whether the claims of an unnamed putative class member can serve as a basis for diversity jurisdiction with varying results.

The Ninth Circuit Court of Appeals, in *Gibson v. Chrysler Corporation,* squarely addressed the issue, concluding that an unnamed plaintiff's claims cannot provide a basis for diversity jurisdiction.[27] The *Gibson* court reasoned that it is "impractical and uncertain" to include the claims of unnamed plaintiffs in evaluating jurisdiction for two reasons: (1) the unnamed plaintiffs could opt out of the class, and (2) a denial of class certification would prevent the court from taking jurisdiction over the claims of the unnamed class members.[28] The *Gibson* court, thus, determined that both prongs of 28 U.S.C. § 1332—diversity and amount in controversy—can only be satisfied by named plaintiffs.[29]

---

**24.** 51 F.3d at 529.

**25.** *Chapman Funeral Home, Inc.,* 178 F.Supp.2d at 1252 (*citing In re Abbott Labs.,* 51 F.3d at 528).

**26.** *Id.*

**27.** 261 F.3d 927 (9th Cir.2001).

**28.** *Id.* at 941.

**29.** A class action suit may be brought in federal court, for diversity purposes, when one member of a class is of diverse citizenship from the class' opponent, and no non-diverse members are named as parties. *Indianer v. Franklin Life Insurance Company,* 113 F.R.D. 595, 598 n. 2 (S.D.Fla.1986). The *Gibson* court concluded that the court's treatment of the amount in controversy prong of § 1332 should mirror the treatment of the diversity

Similarly, the district court for the Southern District of Florida in *Klempner*[30] concluded that "the alleged value of the claims of unnamed plaintiffs cannot be used to establish original jurisdiction."[31] The *Klempner* court, relied heavily on the holding in *Gibson*, noting that *Gibson* is the only court to address squarely this issue.[32]

Subsequent to the *Gibson* and *Klempner* decisions, the issue was addressed by the Middle District of Alabama in *Chapman Funeral Home*.[33] The Middle District of Alabama, however, determined the issue the other way, finding that "the jurisdictional inquiry is not limited to the ability of the named plaintiff to meet the jurisdictional amount."[34] The *Chapman Funeral Home* court determined that it was bound by the Eleventh Circuit's holding in *Morrison v. Allstate Indemnity Co.*,[35] finding that the Eleventh Circuit's suggestion that an unnamed plaintiff can satisfy the amount in controversy was binding precedent.[36] Jurisdiction in *Chapman Funeral Home* was, thus, exercised by the court on the basis of a putative class member, who met the jurisdictional amount.

█ The Court is bound by the decisions of the Eleventh Circuit, and, while the Court recognizes that the Eleventh Circuit has not squarely addressed this issue, there are several other Eleventh Circuit cases which suggest that the claims of an unnamed plaintiff may be used to establish the required jurisdictional

amount for amount in controversy purposes.

In *Morrison*, even though the claims of the named plaintiffs were insufficient to satisfy the amount in controversy, the Eleventh Circuit refrained from dismissing the case for lack of subject matter jurisdiction. Instead, the *Morrison* court remanded the matter to the district court in order to provide the plaintiffs with an opportunity to "show whether there are other class members who may make a 'good faith' allegation that they have incurred $75,000 in damages."[37] In so holding, the *Morrison* court suggested that the claims of unnamed putative class members could be considered for purposes of determining amount in controversy.

Again, in *Kirkland v. Midland Mortgage Company*,[38] the Eleventh Circuit suggested that the court was not limited to the claims of the named plaintiff in evaluating the amount in controversy. The *Kirkland* court, in concluding that there was no federal subject matter jurisdiction, distinguished the *Morrison* case by determining that in order for a case to remain in federal court there must be at least a "credible assertion" that a putative class member's claims are sufficient to establish the requisite amount in controversy. Whereas the plaintiffs in *Morrison* had demonstrated that there were at least some class members who had suffered substantial damages, the plaintiffs in *Kirkland* failed to make such an assertion. Nevertheless, the discussion in *Kirkland* clearly

---

prong of § 1332. Thus, the *Gibson* court considered only the claims of named plaintiffs in evaluating the requisite amount in controversy.

**30.** 196 F.Supp.2d 1233.

**31.** *Id.* at 1238.

**32.** *Id.* at 1238–1239.

**33.** 178 F.Supp.2d 1247.

**34.** *Id.* at 1250.

**35.** 228 F.3d 1255 (11th Cir.2000).

**36.** *Id.*

**37.** *Morrison*, 228 F.3d at 1273.

**38.** 243 F.3d 1277 (11th Cir.2001).

contemplates that an unnamed putative class member's claims could be used to meet the jurisdictional amount.

Finally, in *Leonard v. Enterprise Rent A Car*,[39] the Eleventh Circuit determined that there was no basis for federal diversity jurisdiction and ordered that the case be remanded to state court. In reviewing the defendant's notice of removal and determining whether the court had subject matter jurisdiction, the *Leonard* court, like the *Kirkland* court, concluded that the court lacked subject matter jurisdiction, as there was no "credible assertion that at least one member of the plaintiff class stands to recover damages and other relief valued in excess of $75,000."[40] The *Leonard* court, then, suggested in its discussion that, for amount in controversy purposes, jurisdiction could be based upon the claims of unnamed class members.

The *Morrison*, *Kirkland*, and *Leonard* decisions all suggest that the Eleventh Circuit may look to the claims of unnamed plaintiffs to satisfy amount in controversy. While the Court recognizes that other courts have reached a different conclusion, the Court determines that if confronted with the issue, the Eleventh Circuit would find that the jurisdictional amount in controversy could be satisfied by the claims of the unnamed Plaintiff.[41] Accordingly, the Court concludes that Defendants may rely upon the damages claimed by an unnamed plaintiff in attempting to establish the jurisdictional threshold.

Having determined that the Defendants may rely upon the claim of an unnamed putative class member, the Court must now determine whether Defendants have established that the claim of the unnamed class member satisfies the amount in controversy. As discussed below, Defendants have failed to establish under any set of circumstances that the claim of the unnamed class plaintiff exceeds the sum of $75,000.

**39.** 279 F.3d 967 (11th Cir.2002).

**40.** *Id.* at 974.

**41.** In reaching this conclusion, the Court recognizes that the Plaintiffs and the Defendants have made persuasive policy arguments supporting their respective positions, emphasizing the problems that could result from and the deficiencies in the other side's position. The Plaintiffs correctly contend that the unnamed plaintiff, upon whom jurisdiction is based, could opt out of the class action, and that class certification could be denied, thereby removing from the case the party upon whom jurisdiction is based. While the Plaintiffs' argument is persuasive, it is also short-sighted, as the Plaintiffs have failed to recognize that even a named plaintiff—a party upon whom the Plaintiffs would have the Court base jurisdiction—can opt out of a class action. Moreover, the Plaintiffs fail to acknowledge that while it is possible that the Court could deny class certification in this case, the Court must treat this lawsuit as a class action from the time the suit is commenced until the Court determines the class certification issue. *See Morrison*, 228 F.3d at 1263 n. 7 (stating that the court would treat the class as if it had been certified until a ruling was issued on class certification). The Defendants also correctly assert that, under the Plaintiffs' theory, class action plaintiffs could manipulate jurisdiction in a case by artfully selecting their class representatives. For example, class action plaintiffs could avoid federal jurisdiction simply by selecting class representatives with claims below $75,000, even if the majority of class members had claims valued in excess of $75,000.

The obvious solution to the problems highlighted by the parties, however, is not judicial in nature, but rather legislative. Indeed, the Class Action Fairness Act of 2003 is currently pending before the 108th Congress. This new legislation would amend 28 U.S.C. § 1332 and grant federal courts original jurisdiction over any class action in which the specific diversity requirements are met and the matter in controversy exceeds $2 million dollars. *See* Class Action Fairness Act of 2003, S. 274, 108th Cong. (2003).

## C. The Value of the Claim of the Unnamed Plaintiff

The Defendants contend that there is one unnamed Plaintiff who has paid $73,385.94 in premiums on his/her insurance policy to date, and that this unnamed putative class member will have paid $82,708.78 in premiums by November of 2003—significantly before this case is scheduled to go to trial. (Doc. 29 at 4, Doc. 42 at 2.) The Defendants argue that the claim of the unnamed putative class member for restitution alone, then, is sufficient to satisfy the $75,000 jurisdictional requirement.

The Defendants' argument, however, misconstrues the damages actually being sought by the Plaintiffs in this action. Restitution is a remedy based on a defendant's unjust enrichment and is measured by either the defendant's gain or the plaintiff's loss resulting therefrom.[42] In the current case, the Plaintiffs request in their restitution claim that the Defendants return to the Plaintiffs any and all "unjust profits" received through the Defendants' unreasonable increase in insurance premiums. These "profits" would consist of only the excess money paid by Plaintiffs for their long-term care insurance policies, but not all premiums paid. In short, the Plaintiffs want to remain insured at the original premium rates, and have returned to them the excess money paid for the increased premiums.[43] (Doc. 2 at 66.)

During oral argument, the Defendants conceded that there is only one unnamed plaintiff with a claim approaching the $75,000 jurisdictional amount in controversy—an unnamed plaintiff who has paid $73,385.94 in premiums to date. The restitution claim of the unnamed Plaintiff is not the $73,385.94 paid in premiums, however, but rather the money allegedly overpaid for the increased premiums—an amount significantly less than $73,385.94. Therefore, rather than utilizing the full amount paid in premiums, the correct measure of the claim of the unnamed Plaintiff would be either the money the Defendants' gained by unreasonably increasing the price of the insurance premiums or the amount overpaid by the unnamed Plaintiff for the higher insurance premiums.[44] Regardless of whether the Court was to measure the value of the restitution claim by the value of the benefit received by the Defendants, or the value of the money lost by the unnamed Plaintiff, the outcome would be the same—the restitution claim would be less than the $73,385.94 the De-

---

**42.** See, for example, Schwartz v. Gregori, M.D., 45 F.3d 1017 (6th Cir.1995) (stating that restitution "generally is awarded to prevent unjust enrichment to the defendant," and restoring the plaintiff to the position she formerly occupied by awarding the plaintiff restitution in the amount of the difference between the plaintiff's current income and that which she would have received if still employed by the defendant); see also Alexander v. Primerica Holdings, Inc., 819 F.Supp. 1296 (D.N.J.1993) (stating that restitution involves restoring a party to the status quo by returning a sum rightfully belonging to the party).

**43.** As further evidence that the Plaintiffs are seeking only the amount overpaid for their insurance premiums, the Court notes that the Plaintiffs are not seeking to have the insur-

ance contract voided. If the Plaintiffs sought rescission of the contract, the Plaintiffs might reasonably demand a return of all of the money paid under the contract. Additionally, the Plaintiffs do not allege that they have been refused, or have received inadequate, benefits. Because restitution is a claim in equity, it would be inequitable for a party to receive both the benefit for which the party contracted and the full amount of money paid for the benefit received (i.e. insurance coverage).

**44.** See Schwartz v. Gregori, M.D., 45 F.3d 1017, 1022–23 (6th Cir.1995) (describing the equitable nature of restitution and stating that while "restitution generally is awarded to prevent unjust enrichment to the defendant," it can also be used to "restore the plaintiff to the position he formerly occupied").

fendants contend the unnamed Plaintiff has paid to date.

Thus, even assuming the Defendants only had to establish that the claim of one unnamed plaintiff was sufficient for the Court to exercise original and supplemental jurisdiction in this case, the Defendants have failed, nonetheless, to establish that there is a putative class member with a claim sufficient to trigger jurisdiction. Accordingly, for this reason, the Court concludes that the Plaintiffs' Motion to Remand is due to be **GRANTED**, and this matter is due to be remanded to state court.[45]

### *RECOMMENDATION*

In view of the foregoing, it is respectfully **RECOMMENDED** that the Plaintiffs' Motion To Remand To State Court (Doc. 21) be **GRANTED** and that this case be remanded to the Circuit Court of the Fifth Judicial Circuit, in and for Marion County, Florida.

June 4, 2003.

---

**45.** Further, even assuming *arguendo* that the full amount paid for the insurance premium was the correct measure of the Plaintiffs' restitution claim, the Court concludes that it cannot consider the unnamed Plaintiff's future (November) premium payment in calculating the amount in controversy.

The Defendants correctly argue in general that future payments may be considered when calculating damages for amount in controversy purposes when the right to future payments is unconditional and the relief sought in the lawsuit encompasses future payments. *See, Ardrey v. Federal Kemper Insurance Company,* 798 F.Supp. 1147 (E.D.Pa.1992). In the current case, however, the Defendants' right to receive future payments from the Plaintiffs is not unconditional. There is no legal or contractual right the Defendants have to receive future premium payments from the Plaintiffs. The payment of future premiums is wholly within the discretion of each of the class members in this case. *Id.* Indeed, it is possible that the unnamed Plaintiff, upon whom the Defendants rely for amount in controversy purposes, could terminate his insurance contract or pass away prior to making the November payment. Because the pay-

ment of future premiums is within the discretion of the Plaintiffs, and is thus conditional, the Court concludes that the November payment of the unnamed putative class member cannot be used to satisfy the amount in controversy requirement.

In deciding whether to consider future premium payments in the calculation of damages, the district court's decision in *Indianer v. Franklin Life Insurance Company,* 113 F.R.D. 595 (S.D.Fla.1986) is instructive. In *Indianer,* the plaintiff attempted to satisfy the jurisdictional amount in controversy by utilizing the defendant's future life insurance dividend payments. The *Indianer* court determined that it would be improper to consider future payments in computing damages because—unlike claims involving disability benefits, where the insurance company is obligated to make payments so long as the disabling condition exists—the payment of dividends by the insurance company in *Indianer* was purely within the defendant's discretion.

Similarly, in the current case, a defendant is relying upon the discretionary future payments of the opposing party. As such, it would be improper for the Court to consider

the unnamed Plaintiff's future payments in evaluating the amount in controversy.